OPINION
{¶ 1} Appellant, Lone Star Steakhouse Saloon of Ohio, appeals the trial court's grant of declaratory judgment in favor of appellees, Richard M. Osborne, Sylvia Ryska, and Interfam, Inc.
 {¶ 2} On October 15, 1980, Edward Ryska entered into a lease agreement with Howard Johnson Company for the lease of property located at 7495 Mentor Avenue (hereinafter "Lone Star property"). The Lease Indenture was a fifty year lease to Howard Johnson of 1.49 acres of the southerly portion of two tax parcels owned by Ryska. The Lease Indenture granted the lessee the option to purchase the property, the right to mortgage the property, as well as demolish any structures located thereon.
 {¶ 3} Evidence demonstrated that the lease of the southerly portion of the property would act to effectively land-lock the northerly parcel from access to any thoroughfare. With this in mind, the Lease Indenture included an attached exhibit ("Exhibit A") which stated:
 {¶ 4} "Situated in the City of Mentor, County of Lake and State of Ohio and known as being part of Lot 8, Tract 4 in said City and being bounded and described as follows:
 {¶ 5} "[Legal description omitted]
 {¶ 6} "Subject to Lessor reserving a twenty four foot easement for the length of the property on the westerly side. Said easement to be used for ingress, egress and utilities, the terms and conditions to be agreed upon by the parties."
 {¶ 7} On November 26, 1980, a Declaration of the Lease Agreement was recorded in the Lake County Recorder's Office which contained the following reference to the above reservation:
 {¶ 8} "Situated in the City of Mentor, County of Lake and State of Ohio and known as being a part of Lot 8, Tract 4 in said City and being bounded and described as follows:
 {¶ 9} "[Legal description omitted]
 {¶ 10} "Subject to Lessor reserving a twenty-four foot easement for the length of the property on the Westerly side. The terms and conditions of said easement and to its use to be agreed upon by the parties."
 {¶ 11} On November 13, 1985, Howard Johnson assigned its rights in the Lease Indenture to Ground Round, Inc. By this assignment, Ground Round assumed all the "terms, covenants and conditions to be performed or complied with" pursuant to the original lease. On February 12, 1988, Edward Ryska quitclaimed the North Parcel to Interfam, Inc., a corporation solely owned by Ryska. On January 29, 1992, Ryska conveyed the property to the west of the Lone Star property to third parties ("Longos" or "Longo property").
 {¶ 12} On October 11, 1996, Ground Round, Inc. assigned its rights in the lease to Lone Star. This assignment included the same legal description of the Lone Star Property and the same reference to the easement included in the November 26, 1980 Declaration of Lease. Karen Perrill, the manager for acquisition and title for Lone Star, admitted at trial that she was aware of the easement reservation in the Lease Agreement, but determined the language failed to create a valid easement; rather, Ms. Perrill contended the language simply set forth an "agreement to agree" to a possible easement in the future.
 {¶ 13} Approximately one year earlier, on October 23, 1995, Interfam entered into a purchase agreement with Richard Osborne for the purchase of three parcels of land located to the north of the Lone Star property (collectively "North Parcel"). On November 3, 1995, Osborne filed an Affidavit of Title which included a legal description of the purchased property and an appended copy of "Exhibit A" from the October 15, 1980 Lease Indenture.
 {¶ 14} Osborne obtained title insurance for this property from Chicago Title. The policy did not insure the easement on the Lone Star property. However, Mary Moran, the manager of the Lake County offices of Chicago Title testified that her company's decision not to insure the reservation of easement was business related but this did not suggest the easement was invalid. To wit, Ms. Moran testified that in her opinion as an attorney and title examiner, the language used in Exhibit A of the Lease Indenture and Declaration of Lease created a valid easement appurtenant burdening the Lone Star property for the benefit of the North Parcel.[1]
 {¶ 15} On February 27, 1996, Interfam conveyed, by warranty deed, the property from the October 23, 1995 purchase agreement to Heisly-Hopkins, Inc. ("Heisley), a company owned by Osborne. Moreover, on the same date, Sylvia W. Ryska (wife of the late Edward Ryska) conveyed, by fiduciary deed, the property identified in the purchase agreement. Both Heisley deeds specifically granted the easement burdening the Longo Property, but made no mention of the easement reservation burdening the Lone Star Property.
 {¶ 16} On February 3, 2000, Lone Star provided notice of the exercise of its option to purchase the Property. On March 1, 2002, Sylvia Ryska and Interfam conveyed the Property to Lone Star.
 {¶ 17} Lone Star filed a complaint in this matter seeking a declaratory judgment and damages against appellees. Specifically, appellant sought a declaration from the trial court that Osborne had no valid easement rights over the Lone Star Property. Lone Star further sought a declaration that the November 3, 1995 Affidavit of Title filed by Osborne was null and void. Osborne filed a counter-claim against Lone Star seeking a declaration affirming his easement rights over the Lone Star Property.
 {¶ 18} On June 6, 2002, a bench trial was held and on January 17, 2003, the trial court declared that Osborne had a valid subsisting easement over the property at issue. On October 30, 2003, the court issued a second judgment entry indicating that all issues in the case were resolved and there was no just cause for delay of an appeal of the January 17, 2003 judgment entry.
 {¶ 19} Lone Star summarizes the legal snarl before this court in the following assignment of error:
 {¶ 20} "The trial court erred in declaring that Defendant Osborne has a valid and subsisting express appurtenant easement over the westerly twenty-four feet of Lone Star's property."
 {¶ 21} When reviewing a declaratory judgment an appellate court observes whether the trial court's judgment finds support in competent, credible evidence going to all elements of claim or defense. C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. We commence our review presuming the trial court's findings of fact are correct. Long v. Hurles (1996), 113 Ohio App.3d 228, 233. Further, where the evidence is susceptible to more than one interpretation, we are bound to give it that construction which is consistent with the trial court's judgment. Estate of Barbieri v. Evans (1998),127 Ohio App.3d 207, 211. Such allowances are proper because evaluating evidence and assessing credibility are duties which primarily rest with the trier of fact. Sines Sons v. Shell Oil Co., (Sept. 18, 1998), 11th Dist. No. 96-G-2040, 1998 Ohio App. LEXIS 4370, 7-8.
 {¶ 22} Lone Star sets forth numerous arguments in support of its assigned error which we shall treat in turn. Lone Star first contends:
 {¶ 23} "A legal description of leased real property stating that it is `subject to Lessor reserving a twenty-four foot easement for the length of the property on the westerly side' and that the easement will `be used for ingress, egress and utilities, the terms and conditions to be agreed upon by the parties' does not create an express appurtenant easement burdening the demised premises."
 {¶ 24} An easement is an incorporeal interest in land created by grant or prescription that entitles the owner of the easement to a limited use of the land in which the interest exists. Alban v. R.K. Co., (1968),15 Ohio St.2d 229, 231. Easements may be appurtenant or in gross; An easement appurtenant requires a dominant tenement to which the benefit of the easement attaches or "appertains" and a servient tenement upon which the obligation or burden rests. Warren v. Brenner (1950),89 Ohio App. 188, 192. Such easements "run with the land" as opposed to an easement in gross which conveys to another a personal privilege to use the land but expires with the party to whom the privilege belongs. Id. at 195. "An easement is seldom considered to be in gross when it can be fairly construed to be appurtenant to some estate." Ohio Jurisprudence 3d, Easements Licenses, Section 12. No particular words are required to create an easement by express grant so long as the intent of the parties is clear from the document. Cincinnati Entertainment Assoc. v.Bd. of Commissioners (2001), 141 Ohio App.3d 803.
 {¶ 25} The language at issue appears in Exhibit A of the October 15, 1980 Indenture of Lease between Edward Ryska and Howard Johnson, Co. and states:
 {¶ 26} "Subject to Lessor reserving a twenty-four foot easement for the length of the property on the Westerly side. Said easement to be used for ingress, egress and utilities, the terms and conditions to be agreed upon by the parties."
 {¶ 27} Lone Star first argues that the language in Exhibit A of the Lease Option did not create an easement but personal privilege dependent upon some future occurrence. In Lone Star's view, the language of the document is merely an "agreement to agree" because, in its plainest terms, it expresses an intention to do something in the future; in this case, to agree to "terms and conditions" of the easement in the future. Lone Star emphasizes Ryska's use of the term "reserving" which, in its view, is indicative of future action, as contrasted with the use of the phrase "subject to lessors' reservation of" which would indicate a present intention to reserve. We disagree.
 {¶ 28} Again, we note that no particular language is required to create an easement by express grant so long as the intent of the parties is clear and the formal statutory requirements are met. CincinnatiEntertainment Assoc., supra, at 813. Here, the language of the instrument clearly delineates the dimensions, location, and purpose of the easement. Thus, in our view, a valid easement was created irrespective of Lone Star's linguistic arguments.
 {¶ 29} Specifically, we believe that the subtle distinctions between the terms "reserving" and "reserve" do not inform the current discussion. While it is reasonable to read the term "reserving" as suggestive of a future action, it is equally reasonable to read the term as an act presently occurring. That is, the term "reserving" is gerundive and, as used in the Exhibit A, could connote the act of including an easement within the lease agreement. Hence, the use of the term "reserving" rather than "reserve" is inconsequential to the formation of a valid easement.
 {¶ 30} Further, a final and conclusive representation of all "terms and conditions" is not a necessary condition for the creation of a valid easement. On cross-examination, Donald Denney, a title insurance agent who did a title search of the property for Lone Star, testified that a provision in an easement stating that "terms and conditions need to be agreed upon by the parties at a later date" does not necessarily invalidate the creation of an appurtenant easement. This position was echoed by the testimony of Mary Moran, an attorney and manager of the Lake County office of Chicago Title, when she testified to her interpretation of the "terms and conditions" language in Exhibit A of the Indenture of Lease:
 {¶ 31} "Q. What about the terms and conditions language, what is that, is that of any significance.
 {¶ 32} "A. It says the terms and conditions to be agreed upon by the parties.
 {¶ 33} "That is not something that is covered by our title insurance, when we insure an easement. We specifically take exceptions, when we are insuring an easement, either for the terms or conditions or duties and obligations we are insuring.
 {¶ 34} "So what the terms and conditions are, are not something that are crucial to our decision as to whether or not we're going to insure an easement.
 {¶ 35} "Q. Does that language have anything to do with the fact — does that language in any way limit the fact that there is or is not an easement on this property?
 {¶ 36} "A. No, it does not, because it's not part of the real estate grant."
 {¶ 37} For the above reasons, we believe the record contains some competent, credible evidence that the reservation set forth in Exhibit A of the Lease Indenture demonstrates that the original parties to the lease intended to create an easement over Lone Star's property for ingress, egress, and utilities.
 {¶ 38} Lone Star next argues, even if the original reservation created an easement, it was not an easement appurtenant because it expressed no clear intent to benefit the dominant estate. While the document does not explicitly state "for the benefit of the dominant parcel located north of leased property" (or the like) the lease option in which the reservation appears acted to "land lock" a parcel of property, owned, at the time, by Edward Ryska, which was contiguous with and directly North of Lone Star's property.
 {¶ 39} As indicated above, an easement is appurtenant when it is attached to a piece of land and benefits the owner of the land in her use and enjoyment thereof. An easement in gross, or personal right, is intended to benefit the owner of the land personally rather than in connection with any land the holder owns; here, the language of the document indicates a purpose to benefit Ryska in connection with the northerly parcel of land owned by him. The express language clearly reveals the purpose of the easement, i.e., for ingress, egress, and utilities. Such uses are inherently beneficial to the land they function to serve, i.e., Ryska's northern parcel.[2]
 {¶ 40} The express purpose of the easement in light of the surrounding circumstances suggests the easement was created to benefit the dominant tenement (i.e. the North Parcel) by way of providing general access to and from Mentor avenue and utility rights. While there is no express language stipulating that the easement was created to benefit the northerly parcel, we can reasonably glean this intent from the express purpose of the document.
 {¶ 41} Lone Star additionally argues the reservation in Exhibit A is not an easement appurtenant because it is significantly less specific than the undisputed easement appurtenant created in the 1992 Ryska/Longo conveyance. This argument is one of analogy: By referencing the 1992 easement created over the Longo property, it is clear Ed Ryska, an individual sophisticated in real estate transactions, could create a precise easement appurtenant. Because the easement in Exhibit A is neither as specific nor precise as the easement in the Longo deed, it was not intended to create an easement appurtenant. We do not find appellant's comparative argument persuasive.
 {¶ 42} While the Longo easement is more specific in its language, this specificity does not bear on whether the reservation in Exhibit A is or is not an easement appurtenant. Because no formulaic language is necessary to create an easement, the reservation in Exhibit A must be analyzed on its own terms. Therefore, while the Longo easement shows that Ryska could create an unequivocal easement appurtenant, such evidence does not imply that the reservation set forth in Exhibit A is insufficient to create the same.
 {¶ 43} After reviewing the evidence as it relates to the easement set forth in Exhibit A, we believe the original parties intended to create a valid easement appurtenant. We therefore hold the record contains some competent, credible evidence to support this conclusion; thus, we affirm the trial court's determination that the reservation included in Exhibit A of the Lease Indenture was an easement appurtenant.[3]
 {¶ 44} Lone Star next contends that even if the language within Exhibit A of the Lease Indenture created an easement, the doctrines of laches and estoppel bar it from burdening Lone Star's property.
 {¶ 45} In its judgment entry, the trial court recognized that an easement may be terminated by estoppel; however, the court determined that although "non-use of the easement has been clearly shown[,]" and that the removal of the obstructions in the area of the easement "would significantly impact [Lone Star's] business," estoppel did not extinguish the easement. In Lone Star's view, the court's recognitions, in conjunction with the non-action of the owners of the dominant estate, demonstrate the easement should be extinguished by estoppel.
 {¶ 46} In essence, the extinguishment of an easement by the doctrines of estoppel or laches invokes a general inquiry into whether retaining the easement would be fair and equitable given the acts and/or omissions of the parties of interest. While Ohio caselaw does not reveal a concise legal definition of the necessary requirements of how an easement might be extinguished by estoppel, the thrust of the doctrine of estoppel centers upon "reasonable reliance" and a consequent "detriment" suffered therefrom. See, State ex rel Chavis v. Sycamore City School Board ofEducation (1994), 71 Ohio St.3d 26, 34. With this in mind, an easement may be extinguished by estoppel when a servient tenant, in reasonable reliance on conduct of the dominant tenant, uses the servient estate in a manner inconsistent with the easement and it would be inequitable to permit additional use of the easement.
 {¶ 47} Extinguishment of an easement by laches requires (1) a delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury; (4) prejudice to the other party. State ex rel. Cater v. N. Olmsted (1994),69 Ohio St.3d 315, 325.
 {¶ 48} From our research, Zimmerman v. Cindle (1988),48 Ohio App.3d 164 is the leading authority in Ohio on the extinguishment of easements via the doctrines of estoppel and laches. InZimmerman the court held:
 {¶ 49} "Although nonuse of an easement obtained by prescription does not, by itself, amount to an abandonment where the holders of the subservient estate have made substantial changes and improvements to the disputed land, the holders of the dominant estate may not `sit' on their rights but must take positive and timely action or risk the loss of the easement through the doctrines of estoppel and laches." Id. at paragraph one of the syllabus. (emphasis added)
 {¶ 50} The current easement was an expressly granted easement appurtenant; it did not arise by prescription. Express easements appurtenant appear in the chain of title to property and therefore place a servient tenant on notice, at the point of obtaining an interest in the property, of the interest appertaining to the dominant estate. Evidently, the express presence of the easement in the chain of title suffices to place a servient tenant on notice of the existing interest and, consequently, equity does not acknowledge the extinguishment of such an easement by recourse to estoppel and laches. Lone Star's theories of extinguishment based upon estoppel and laches set forth compelling arguments pertaining to the relative equities involved. However, given the limited application of these theories to extinguishment of easements in Ohio, we shall follow the rule set forth in Zimmerman and overrule Lone Star's equity arguments.
 {¶ 51} Next, Lone Star argues that appellees' right to burden its property terminated when Lone Star terminated the leasehold by purchasing the property. In particular, Lone Star contends that Exhibit A of the Lease Indenture provided that the "terms and conditions" of the easement would be agreed upon, but were not. As no "terms and conditions" were ever agreed upon prior to Lone Star's purchase of the property, the separate and independent terms of the Lease Indenture were merged into the deed which contained no easement. Thus, in Lone Star's view, the doctrine of merger bars the enforcement of the easement.
 {¶ 52} While Lone Star's argument is novel, we do not believe it properly applies the doctrine of merger. "The doctrine of merger rests upon the principle that a servitude may not be impressed upon an estate of another estate when both estates are owned by the same person." Heinerv. Kelley (July 23, 1999), 4th Dist. No. 98CA7, 1999 Ohio App. LEXIS 3570, at 28. Thus, an easement is extinguished by merger when the dominant and servient tenements come into the ownership of the same party, irrespective of the manner in which the easement was created. Stateex rel. Synod of United Lutheran Church v. Joseph (1941), 36 Ohio L. Abs. 317. To effectively terminate the easement, the fee title with the right of possession of both tenements must vest in the same party, "coextensively, and equal in validity, quality, and all other circumstances of right." Heiner, supra.
 {¶ 53} Here, Lone Star "came into the ownership" of the servient tenement; however, Lone Star, does not own the dominant tenement. Therefore, the current matter does not admit to an application of the doctrine of merger. We shall nonetheless address the substance of Lone Star's argument.
 {¶ 54} We have already determined a valid easement appurtenant was created by Exhibit A of the Lease Indenture. A valid easement appurtenant runs with the land to which it appertains. Upon its creation, therefore, the owner of the dominant tenement (North Parcel) obtained an interest in the servient tenement (Lone Star Parcel). Even though ownership of the servient tenement transferred to Lone Star through the March 1, 2002 conveyance, the land was still burdened by the valid easement appurtenant held by the owner of the dominant estate. See, Armentrout v. Armentrout
(Aug. 25, 1995), 11th Dist. No. 94-P-0102, 1995 Ohio App. LEXIS 3501, at 11.
 {¶ 55} Finally, Lone Star contends that even if the language included in Exhibit A created an easement, it was extinguished by abandonment. Lone Star contends that Ryska's non-use in conjunction with Ryska's failure to object to obstructions placed in the easement area provide evidence of his intent to abandon the easement over Lone Star's property.
 {¶ 56} Mere non-use of an easement, for a period however long, will not amount to abandonment. Wyatt v. Ohio Dept. of Transportation (1993),87 Ohio App.3d 1, 5. In addition to the non-use, there must be acts or circumstances clearly manifesting an intention to abandon the easement. Id. Intent to abandon an easement must be evidenced by decisive, unequivocal acts inconsistent with continued use and enjoyment of the easement. Crane Hollow, Inc. v. Marathon Ashland Pipe Line,L.L.C. (2000), 138 Ohio App.3d 57, 72. An intention to abandon is a material question, and it may be proved by an innumerable variety of acts. Cane v. Rose (1932), 14 Ohio L. Abs. 297 It is a question of fact to be ascertained from the circumstances of the case, and, in effect, no one case can be authority for another. Id. The determination of whether an easement has been abandoned is a question of fact. Id. Therefore, we will not reverse the trial court's judgment if it is supported by some competent, credible evidence. C.E. Morris Co., supra, at syllabus.
 {¶ 57} In relation to this issue, the trial court determined:
 {¶ 58} "The first element, non-use of the easement, has been clearly shown. Despite being created in 1980, the easement has never been used. Lone Star points to the fact that the failure to ever use the easement plus that fact that it has been obstructed to some extent by the improvement to the property is evidence of the intent to abandon the easement. There is no evidence that the owners (Edward Ryska and Interfam, Inc.) of the dominant estate ever objected to these obstructions. In addition there is a narrower alternate access easement on the Longo property that was specifically conveyed by deed to Heisley-Hopkins, Inc. Nevertheless, the obstructions on the easement in the leasehold are not such that they could not be removed although their removal would significantly impact the lessor's business. In addition, because the dominant estate was never developed, there was apparently no need to utilize the easement. The court finds that Lone Star has failed to show that the owners of the dominant estate intended to abandon the easement."
 {¶ 59} Ryska's/Interfam's failure to utilize the easement is not in dispute; Moreover, pictures submitted as exhibits demonstrate that trees were planted and cement parking abutments were placed on the easement area. These obstructions were placed upon the easement area immediately after Ryska leased the parcel to Howard Johnson's in 1980. However, that said, the cement parking curbs and parking lot appear worn and threadbare and the organic improvements, while evident, are small and sparse. In our view, the non-use and minor obstructions are insufficient to demonstrate a clear intent to abandon.
 {¶ 60} Further, we believe it significant that the purchase agreement entered into between Osborne/Heisly-Hopkins and Ryska/Interfam as well as Osborne's Affidavit of Title refer to the easement on Lone Star's Property. The "Real Estate Purchase Agreement" between Ryska/Interfam and Osborne/Heisley-Hopkins specifically reference all properties to be purchased as well as the excepted[4] Lone Star parcel. The reference to the excepted Lone Star parcel provides a metes and bounds description followed by the following reservation:
 {¶ 61} "Subject to Lessor reserving a twenty-four foot easement for the length of the property on the Westerly side. Said easement to be used for ingress, egress and utilities, the terms and conditions to be agreed upon by the parties."
 {¶ 62} Osborne's Affidavit of Title, which was filed to "put the world on notice of [Osborne's] real estate purchase agreement," contains the same references including a verbatim recitation of the easement reservation. Such references indicate a recognition of the easement and an intent to maintain and utilize the same.
 {¶ 63} It does bear mention that the deed conveying the properties from Ryska/Interfam to Osborne/Heisley-Hopkins does not refer to the easement burdening Lone Star's property; however, we do not think this omission is dispositive of an intention to abandon. This is particularly true where (1) the easement is clearly referenced in two specific documents, signed recently by Osborne, which exist in the chain of title to the dominant tenement and (2) the easement was created in the original Lease Indenture and thus has always existed in the chain of title to the servient tenement. All parties were aware of the easement and the most recent references to its existence in the above mentioned Osborne documents indicate an intention to use the easement. From this, one can reasonably infer the parties in question did not intend to abandon the easement. The trial court's judgment is supported by competent, credible evidence and consequently Lone Star's final argument is consequently overruled.
 {¶ 64} For the foregoing reasons, Lone Star's sole assignment of error lacks merit and the judgment of the Lake County Court of Common Pleas is therefore affirmed.
Ford, P.J., Grendell, J., concur.
[1] Ms. Moran's trial deposition reflects the following exchange:
"Q. Mrs. Moran, based upon your experience as a title examiner and underwriter, do you have an opinion as to whether or not, when this lease was created, an easement was reserved for the benefit of Mr. Ryska's northern parcels * * *.
"* * *
"A. Yes, I do.
"Q. What is your opinion?
"A. That an easement was reserved for the benefit of the property in the rear that was owned by Ryska, at the time this lease was granted, over the property that was being leased to Howard Johnson's.
"Q. And what do you base that opinion on?
"A. On the language in the exception clause after the legal description. It says that it's subject to the lessor reserving the 24-foot easement, so its' clearly granting — it's meant to reserve an easement for the benefit of the lessor, who was Ryska, at the time, who owned the property in the back, and it describes where the easement is located which is 24 feet for the length of the property on the westerly side."
[2] Further, on cross-examination, Bill Sochor, a title agent employed by Chicago title, testified that, in his estimation, if the reservation included in Exhibit A was interpreted as an easement, it would be for the benefit of Ryska's property located north of Lone Star's property.
[3] Our holding that the reservation did create a valid easement appurtenant serves to obviate any analysis of appellant's contentions that Exhibit A served to merely give Rysaka a personal right, license, or easement en gross.
[4] Ryska's properties included the Lone Star parcel which was still under lease by Lone Star at the time of the Ryska/Osborne purchase agreement. As Ryska evidently did not intend to sell the Lone Star parcel at this time, he specifically excluded it from the sale by way of an exception within the purchase agreement and the deed instrument.