OPINION
{¶ 1} Appellant, Griffith Sweet ("Sweet"), appeals the decision of the Portage County Court of Common Pleas, denying him an easement for a driveway and parking, and granting appellees', James W. Caudill and numerous others, claim in ejectment, all arising from an action for partition. We affirm.
 {¶ 2} This matter originated due to an action for partition brought by Sweet regarding "Block A" of the Brady Lake Methodist Church Allotment on July 8, 1998. Numerous defendants filed a counterclaim for ejectment and a cross-claim for partition. Sweet was granted partition by summary judgment, and amended his complaint to demand an easement for driving access to his house. Bench trial was had regarding the easement and the ejectment claims on July 26, September 16, and September 17, 2001. The trial court filed its findings of fact and conclusions of law on March 20, 2002. Commissioners were appointed and they submitted their appraisal. After various protracted proceedings, the trial court issued its order of October 5, 2004, determining that certain defendants also had a right to partition, but that the writ in favor of Sweet was for the benefit of all the co-tenants of Block A. The commissioners were re-appointed. This appeal timely followed.
 {¶ 3} The Brady Lake United Methodist Church Allotment ("the Brady Lake Allotment") originates in the devise of some 9.605 acres of property held by Emily Williard to the Emily Williard School and the Brady Lake United Methodist Church in 1932. Ms. Williard had developed the land as a summer cottage community, and it continued in this guise through the Second World War, when it turned into a permanent housing community. The church and the school owned the property and leased the various lots long-term. At one time, more than seventy lots existed. The inhabitants held the houses as personal property.
 {¶ 4} In about 1983, the church and school learned that a central sewer system was to be constructed for the area, requiring an assessment. The school conveyed its interest to the church, which decided to convey its interest to the inhabitants. A plat was filed with the Recorder of Portage County in April 1984, and the church conveyed the interests in the fifty-two lots then existing to the homeowners by quit-claim deed.
 {¶ 5} Included in the plat for the Brady Lake Allotment is a small strip of land, a little more than two acres, along the lake itself. This is Block A. This had always been a common area for all inhabitants, and under the new regime, each homeowner in the Brady Lake Allotment became a tenant in common, with an undivided 1/52nd interest in Block A. Block A is accessed by "Short Street."
 {¶ 6} Sweet first acquired his home in 1979. It was on Lot 20 in the old development, now Lot 16 in the Brady Lake Allotment. Sweet bought the house on installment on a so-called "land contract" from Roy and Mary Blankenship. In 1980, Sweet entered into a ten-year lease with the church for the lot. He acquired the lot outright by quitclaim deed in April 1984. The unrecorded lease he had with the church gave Sweet the right to access what is now Block A, in language not dissimilar to that found in many leases from the era before the platting. Sweet's house is officially situated at 6550 West Shore Drive. A steep little embankment leads from West Shore down to the house. The other side of the house faces Brady Lake and abuts on Block A.
 {¶ 7} Sweet's predecessors, the Blankenships, had owned the cottage since around 1960. Their son, Jerry, was badly injured in a car accident at the time he graduated from high school, in the early 1960s. Jerry continued to live with his parents. There is no question from the record that Jerry was handicapped and needed crutches to move. The rest is in doubt. There is testimony from trial that Jerry drove a car and parked it in Block A, since he could not climb down the embankment from what is now West Shore Drive. There is testimony that Roy Blankenship drove Jerry to the Block A side of the cottage, and carried him in and out, then parked between what are now the Sweet and Caudill residences. There is testimony that both the father and son drove, the son parking in Block A, the father between the houses. There is testimony that the Blankenship family regularly parked in what is now Block A to take groceries in and out; and that the fuel oil truck accessed the Blankenship residence via Block A. There is testimony that Roy Blankenship would drive into Block A to drop off his son, but never parked anywhere except on what is now West Shore Drive.
 {¶ 8} The testimony and evidence at trial strongly indicated that Sweet has regularly driven into Block A from Short Street, since obtaining his cottage in 1979, and parked in Block A next to his house. The evidence indicated that Sweet has substantially increased the size of his house, and built a fence between his home and the Caudill residence which blocks the side parking allegedly once used by Roy Blankenship. The evidence clearly established that those residents of the Brady Lake Allotment whose properties abut on Block A, including Sweet, have built numerous improvements within Block A, including fences, retaining walls, beach areas, and the odd shed. Sweet has run his painting business from his residence, and has been known to park four or more vehicles, including vans and trucks, in Block A.
 {¶ 9} The record traces increasing tensions between the various residents of the Brady Lake Allotment, and particularly those abutting Block A, eventually resulting in Sweet's filing his action for partition, amended to include a driving and parking easement for himself in Block A, and appellees' cross-claim for partition, and counterclaim for ejectment. Presently, Sweet appeals from the trial court's denial of his claim for an easement, and granting of appellees' claim for ejectment. He makes two assignments of error.
 {¶ 10} "[1.] The court erred when it failed to establish appellant's driveway access under the doctrine of easement by implication or as an appurtenant easement per the Portage County Subdivision Regulations.
 {¶ 11} "[2.] The court erred in granting appellees' claim in ejectment thereby preventing appellant from traveling (sic) over and/or parking on Block `A'."
 {¶ 12} This matter originally arises from an action or writ for partition. While the right to partition is controlled by statute, it arises on the chancery side of the court, and remains equitable in nature. McCarthy v. Lippitt, 150 Ohio App.3d 367,2002-Ohio-6435, at ¶ 22. The standard of review in equitable proceedings is abuse of discretion. Id. Further, the standard of review applied to land easements "is whether the trial court's judgment is supported by some competent, credible evidence going to all the essential elements of the case." Nedolast v.Frankart (Oct. 20, 1999), 3d Dist. No. 1399-19, 1999-Ohio-906, 1999 Ohio App. LEXIS 4891, at 3; Cleveland v. Clifford, 9th Dist. No. 02CA008071, 2003-Ohio-1290, at ¶ 10. We presume the trial court's findings of fact are correct, since the trier of fact is charged with evaluating evidence and credibility.Nedolast at 3.
 {¶ 13} Sweet first argues that he possesses an easement appurtenant, due to the operation of the Portage County Subdivision Regulations, adopted in 1982. Those regulations generally require that all platted lots in Portage County have such actual physical access as is reasonably necessary to enjoy and use the lots and their improvements. Sweet argues that his access to West Shore Drive does not fit this description; that the police power expressed by the Subdivision Regulations is controlling over the interest he acquired in 1984 from the church; and thus, that the requirements of the Subdivision Regulations necessarily create for him a driving and parking easement over Block A, as an appurtenance to that interest.
 {¶ 14} This argument is unavailing. "An `easement appurtenant' arises only when its holder owns a dominant estate at the time of the creation of the easement attaches to the land it benefits. To constitute such an easement, it is necessary that there be two estates or distinct tenements — the dominant, to which the right belongs, and the servient, upon which the obligation rests." 36 Ohio Jurisprudence 3d (2002), Easements and Licenses, Section 11. At the time Sweet first started driving over and parking in Block A, in 1979, he merely owned personal property — the cottage. In 1980, he acquired a ten-year lease of the lot from the church. Block A, at this time, remained land held by the church and school, for the benefit of all the residents of the development. When Sweet acquired his lot, in 1984, he also acquired, as a tenant in common, an undivided 1/52nd interest in Block A. Quite simply, it seems difficult to characterize Sweet's 1980 leasehold, as a "dominant" estate to which common lands, held by the lessor for the benefit of all its lessees, were servient.
 {¶ 15} Essentially, Sweet maintains that the Subdivision Regulations made his lot dominant over Block A for easement purposes, as soon as he acquired the lot in 1984. To support such a position would require evidence that Sweet does not enjoy reasonable access to his house and improved lot, without the easement. This the trial court did not find, and we must defer to its factual judgments. Sweet introduced testimony that it is difficult for him and his wife to go up and down the embankment to West Shore Drive. But the testimony of Lynne Erickson, director of the Portage County Planning Commission, established that only one lot in the Brady Lake Allotment had been considered "landlocked" — i.e., possessing insufficient frontage or access to a public street at the time of platting — and the lot was not Sweet's. This is competent, credible evidence that the trial court could accept as showing that the Subdivision Regulations did not operate to create an easement appurtenant for Sweet's benefit.
 {¶ 16} Next, Sweet argues that he benefits from the doctrine of implied, or constructive, easement.
 {¶ 17} "While implied grants of easements are not favored, being in derogation of the rule that written instruments shall speak for themselves, the same may arise when the following elements appear: (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only." Ciski v. Wentworth (1930),122 Ohio St. 487, paragraph one of the syllabus; accord Campbellv. Great Miami Aerie (1984), 15 Ohio St.3d 79, 80-81.
 {¶ 18} On the evidence presented to the trial court, it could easily find that Sweet does not meet either the second or the fourth elements set forth in the Ciski test. As noted above, Sweet moved into his house at the Brady Lake Allotment in 1979, and has been driving through and parking in Block A ever since. However, the separation of the estate held by the church and school, into the individually-owned lots presently constituting the Allotment, occurred in 1984. Thus, it was not unreasonable for the trial court to conclude that Sweet's use of the alleged easement, from 1979 until 1984, had not "* * * been so long continued * * * as to show that it was meant to be permanent * * * [and] that the servitude * * * [was to] be continuous as distinguished from a temporary or occasional use only." Ciski
at paragraph one of the syllabus.
 {¶ 19} In order to counteract this, Sweet introduced extensive testimony at trial concerning use of the alleged easement by his immediate predecessors, the Blankenships. However, defendants introduced equally substantial amounts of testimony that the Blankenships only drove through or parked in Block A occasionally. "The burden of proof rests upon the claimant to an easement by implication to show the existence of all the elements necessary to establish his right thereto."Trattar v. Rausch (1950), 154 Ohio St. 286, paragraph seven of the syllabus. In the instant case, competent, credible evidence supports the trial court's conclusion that no constructive or implied easement exists.
 {¶ 20} Sweet's first assignment of error is without merit.
 {¶ 21} In his second assignment of error, Sweet again challenges the validity of the trial court's decision preventing him from using Block A as a driveway and for parking. By way of granting appellees' claim for ejectment, the trial court ordered that all obstructions in Block A be removed. Sweet does not challenge the trial court's decision to order the removal of obstructions. He only objects insofar as the trial court's decision keeps him from using his motor vehicles in Block A. Therefore, the second assignment of error must fail for the same reasons as did the first.
 {¶ 22} The decision of the Portage County Court of Common Pleas is affirmed.
Ford, P.J., Rice, J., concur.