OPINION
{¶ 1} The instant matter, submitted on the record and briefs of the parties, is before this court on appellants/cross-appellees', Robert and Sheila Ranallo's ("appellants") notice of appeal from the Lake County Court of Common Pleas filed November 8, 2005, and the November 16, 2005 notice of cross-appeal filed by appellee/cross-appellant, Cleveland Electric Illuminating Company ("CEI" or "appellee").
 {¶ 2} Since 1983, appellants have owned property located on Hobart Road in Waite Hill, Ohio, which was purchased from James Bozell. The property sat vacant until appellants commenced construction of a home in July of 2001.
 {¶ 3} At the time the property was purchased, appellants were aware of utility easements, running along the rear and front fifteen feet of the property, by virtue of a title examination done at the time the property was purchased. While clearing and preparing the property for construction in 1999, appellants were surprised to discover utility poles and wires, owned by and maintained by appellee, located 165 feet from the rear and 385 feet from the front of the property. Appellants represented that they were unaware of the existence of these utility poles since the property was overgrown and "unwalkable" prior to being cleared.
 {¶ 4} Appellants filed a complaint against appellee on February 20, 2002,[1] alleging trespass. The complaint also sought removal or relocation of the poles and wires to the rear 15 feet of the property, as well as injunctive relief.
 {¶ 5} On February 27, 2002, appellee filed its answer and counterclaim, alleging abuse of process and frivolous conduct.
 {¶ 6} Following discovery, appellants filed a motion for summary judgment on June 13, 2002. Appellee filed its own motion for summary judgment on July 22, 2002, arguing that it had an express easement by virtue of a series of "pole line agreements," which were executed by appellee's predecessor-in-interest, the Cleveland Painesville Eastern Railroad Company, and acquired via bill of sale on April 3, 1926. In the alternative, appellee argued that it was entitled to a prescriptive easement by virtue of its installation and maintenance of the poles presently located on the property, dating back to 1939.
 {¶ 7} On October 21, 2003, the trial court denied appellee's motion for summary judgment, finding there were genuine issues of material fact on the easement issues. However, the trial court granted appellee's motion for summary judgment on the basis that it had a license coupled with an interest.
 {¶ 8} Appellants filed a notice of appeal with this court on November 18, 2003, which was followed by a cross-appeal from appellee. This appeal was dismissed, via a memorandum opinion issued June 4, 2004, for a lack of a final appealable order.Ranallo v. FirstEnergy Corp., 11th Dist. No. 2003-L-201,2004-Ohio-2918, at ¶¶ 5-6.
 {¶ 9} After receiving leave to file, appellee filed a second motion for summary judgment on appellants' remaining claims for injunctive relief. This motion was granted by the trial court on April 11, 2005.
 {¶ 10} Appellants filed a second appeal with this court on May 9, 2005. Appellees filed a motion to dismiss the appeal, since their counterclaims for abuse of process and frivolous conduct remained outstanding. This court granted appellee's motion to dismiss, via memorandum opinion, on August 15, 2005. See Ranallo v. First Energy Corp., 11th Dist. No. 2005-L-069,2005-Ohio-4205.
 {¶ 11} After receiving leave from the trial court, appellants filed a motion for summary judgment on appellee's counterclaims on October 7, 2005. While this motion was pending, appellee voluntarily dismissed its counterclaims pursuant to Civ.R. 41(A).
 {¶ 12} On November 8, 2005, appellants filed an appeal of the trial court's October 21, 2003, and April 11, 2005 judgments, assigning the following as error:
 {¶ 13} "[1.] The trial court erred by granting Appellee's Motion for Summary Judgment because there are genuine issues of material fact[.] Appellee is not entitled to judgment as a matter of law and reasonable minds could come to more than one conclusion on the issue of whether Appellee has a license coupled with an interest.
 {¶ 14} "[2.] The trial court erred in granting Appellee Summary Judgment where Appellee's Motion for Summary Judgment was not predicated on the existence of a license coupled with an interest.
 {¶ 15} "[3] The trial court erred in denying Plaintiff's request for injunctive relief."
 {¶ 16} On a timely notice of cross-appeal, appellee assigned the following as error:
 {¶ 17} "[1.] The Trial Court was in Error When It Ruled There Exists a Genuine Issue of Material Fact Regarding Appellee's Express Easement.
 {¶ 18} "[2.] The Trial Court was in Error When It Ruled There Exists a Genuine Issue of Material Fact Regarding Appellee's Prescriptive Easement."
 {¶ 19} "Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try." Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358,1992-Ohio-95. Thus, summary judgment is proper when three conditions are satisfied: 1) there is no genuine issue of material fact; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C);Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389;Harless v. Willis Day Warehousing Co. (1976), 54 Ohio St.2d 64,66.
 {¶ 20} In reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party. Doe v. Shaffer, 90 Ohio St.3d 388, 390,2000-Ohio-186. Since a trial court's decision whether or not to grant summary judgment involves only questions of law, an appellate court conducts a de novo review of the trial court's judgment. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1196-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v.Cty. Commrs. of Scioto Cty. (1993), 87 Ohio App.3d 704, 711
(citation omitted).
 {¶ 21} For ease of discussion, we will address the assigned errors out of order.
 {¶ 22} In their second assignment of error, appellants argue that the trial court erred in granting summary judgment in favor of appellee on the basis of a license coupled with an interest, since appellee did not raise this issue for consideration in their motion for summary judgment. We agree.
 {¶ 23} It is well-settled that Civ.R. 7(B)(1) requires a party who is moving for summary judgment to "state withparticularity the grounds" of a motion and "set forth the relief or order sought." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,114; Akro-Plastics v. Drake Industries (11th Dist. 1996),115 Ohio App.3d 221, 226. The reason behind this requirement "is to allow the opposing party a meaningful opportunity to respond."Mitseff, 38 Ohio St.3d 112, at paragraph one of the syllabus.
 {¶ 24} A review of the parties' respective motions for summary judgment indicates that the only issue raised and argued was whether CEI, by virtue of the existence of either an express or an implied easement, was entitled to erect and maintain utility poles on appellants' property.
 {¶ 25} In its motion for summary judgment, appellee cited toKamenar RR. Salvage, Inc. v. Ohio Edison Co (1992),79 Ohio App.3d 685. Although Kamenar was a case dealing with a license coupled with an interest, appellee cited to this case solely to support its easement arguments. No argument related to a license coupled with an interest was raised until appellee's reply brief to appellant's brief in opposition was filed on September 3, 2002. "Reply briefs are * * * limited to matters in rebuttal, anda party may not raise new issues for the first time.
`Otherwise, a litigant may resort to summary judgment by ambush.'" Lance Acceptance Corp. v. Claudio, 9th Dist. No. 02CA008201, 2003-Ohio-3503, at ¶ 18 (citation omitted) (emphasis added).
 {¶ 26} Furthermore, it is well-settled that a trial court "may not sua sponte grant summary judgment premised on issues not raised by the parties." Eller v. Continental Invest.Partnership, 151 Ohio App.3d 729, 2003-Ohio-894, at ¶ 16, citingIntagliata v. Lightning Rod Mut. Ins. Co. (Dec. 11, 1992), 6th Dist. No. L-92-112, 1992 Ohio App. LEXIS 6180, at *3; Willis Linnen Co., L.P.A. v. Linnen, 163 Ohio App.3d 400,2005-Ohio-4934, at ¶ 28; Flood Co. v. St. Paul Fire MarineIns. Co., 9th Dist. Nos. 21679 and 21683, 2004-Ohio-1599, at ¶ 12.
 {¶ 27} Based upon the foregoing, we conclude that the trial court erred, as a matter of law, by granting summary judgment on the basis of a license coupled with an interest.[2]
 {¶ 28} Appellant's second assignment of error has merit.
 {¶ 29} Since the trial court erred, as a matter of law, in granting summary judgment on the basis of a license coupled with an interest, we need not consider appellants' factual arguments related to this issue. Appellants' first assignment of error is moot.
 {¶ 30} In appellants' third assignment of error, they argue that the trial court erred in granting summary judgment in favor of appellee on the issue of injunctive relief.
 {¶ 31} Since summary judgment on the issue of injunctive relief was predicated on the fact that appellant did not prevail on its original motions for summary judgment, we must reverse. Appellant's third assignment of error is moot.
 {¶ 32} We now turn our attention to appellee's first and second cross-assignments of error, which will be considered together. In its first cross-assignment of error, appellee complains that the trial court erred by not granting summary judgment on the basis of an express easement. In its second cross-assignment of error, appellee argues that the trial court erred in not granting summary judgment on the basis of an implied easement.
 {¶ 33} An easement may be created by any one of four methods: "by grant, implication, prescription, or estoppel." Kamenar,79 Ohio App.3d at 689 (citations omitted).
 {¶ 34} In the instant matter, appellee contends that the presence of its electrical poles and lines is subject to either an express easement, by virtue of its assumption of an easement created by "pole line agreements" executed between appellee's predecessor in interest, the Cleveland Painesville and Eastern Railroad Company, and John Sherwin, F.E. Drury, and Charles Otis, which were filed with the Lake County Recorder on April 6, 1922, and subsequently transferred to appellee on April 3, 1926.
 {¶ 35} "If a party is contending that an easement is created expressly, it is necessary that a grant be included in the language of a deed, lease, or the like." Id. (citation omitted). If, however, a party seeks to demonstrate an easement by prescription, he must show that he had no permission from the landowner to use the property, and further must demonstrate that its adverse possession has continued for twenty-one years. Id. at 690.
 {¶ 36} "An easement is an interest in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists. * * * An easement implies necessarily a fee in another, and it follows that it is a right, by reason of such ownership, to use the land for a special purpose * * * not inconsistent with the general property in the land of the owner of the fee, his property rights, however, to be exercised in such way as to not unreasonably interfere with the special use for which the easement was acquired." Szaraz v.Consolidated RR. Corp. (1983), 10 Ohio App.3d 89, 91 (citations omitted).
 {¶ 37} "An easement appurtenant requires a dominant tenement to which the benefit of the easement attaches * * * and a servient tenement upon which the * * * burden rests." Lone StarSteakhouse Saloon of Ohio, Inc. v. Ryska, 11th Dist. No. 2003-L-192, 2005-Ohio-3398, at ¶ 24; see also Pence v. Darst
(1989), 62 Ohio App.3d 32, 37 ("In order to create an express easement, the owner of the servient property must grant or convey to the owner of the dominant property a right to use or benefit from his estate.") Such easements are said to "run with the land," meaning that they do not expire if the dominant or servient tenements are transferred. Id. No particular "magic words" are required to create an express easement, as long as the intent of the parties is clear from the document and formal statutory requirements, i.e., a signed writing, properly witnessed by two disinterested parties, are met. CincinnatiEntertainment Assocs. Ltd v. Bd. of Commrs. of Hamiltion Cty.
(2001), 141 Ohio App.3d 803, 813.
 {¶ 38} Two separate grants are at issue in appellee's motion for summary judgment. The first, known as the "Drury Grant," was executed on April 14, 1922, and reads, in pertinent part, as follows:
 {¶ 39} "That * * * the person[s], whose names are signed to this instrument, have procured the necessary consents and erected, and caused to be erected, a pole and wire line consisting of poles set into the ground, and copper wires strung on cross arms attached there to, on and along Bonnell Hill 
Waite Hill to the John Sherwin Farm opposite Brannon House, * * * for the purpose of enabling electric current for domestic purpose to be transmitted over it, and
 {¶ 40} "Whereas, the owners have constructed said pole and wire line * * * and * * * are jointly the sole owners thereof and they and each of them now desire to convey and transfer the ownership thereof and the right to maintain the same * * * to the CLEVELAND PAINESVILLE AND EASTERN RAILROAD COMPANY.
 {¶ 41} "* * * [A]ll of the owners of the pole and wire line * * * in consideration of the promises and one dollar to each of them * * * do for themselves and their heirs, executors, administrators and assigns, hereby sell, assign, transfer and convey to the said * * * COMPANY its successors and assigns, the said pole and wire line above described * * * together with the right to maintain said pole line at its present location, so that hereafter, said Company shall be the sole owner thereof; and said pole line shall become part of the property of the said Company, to be used as its other pole lines in supplying electric current for domestic purposes * * *."
 {¶ 42} A second pole line agreement, the "Otis Grant," executed on April 24, 1922, contained language similar to the Drury Grant, with the exception of the property described, and covered "a pole and wire line consisting of poles set in the ground and copper wires strung on cross arms attached thereto, on and along Waite Hill Road, from Brannon House to Cox Road and one-half mile South on Cox Road — Willoughby Township, which pole and wire line has been constructed for the purpose of enabling electric current for domestic purposes to be transmitted over it[.]"
 {¶ 43} The Drury and Otis Grants were attached to appellee's motion for summary judgment, dated July 16, 2003. They were incorporated by reference to the affidavit of Scott J. Robinson, which stated his familiarity with "the location of the property at issue," and further averred that Robinson had "reviewed documents relevant to this property including successive deed[s] in the chain of title."
 {¶ 44} Also attached and incorporated by reference to Robinson's affidavit were a series of warranty deeds, dating back to August 30, 1955, which tended to establish a chain of Title to "a part of Lot 1, Tract 2, * * * beginning in the center of Hobart Road." The first deed transferred "63.937 acres of land" from one John Sherwin, Jr. to John David Wright.
 {¶ 45} A second deed, dated August 29, 1975, transferred various parcels, from Wright to Raymond F. Evans, "whose tax mailing address will be 9610 Hobart Road." This transfer included a deed delineating "Parcel No. 1," for transfer which was, by its legal description, the same 63.937 acres of land transferred from John Sherwin Jr. to Wright in 1955.
 {¶ 46} The third warranty deed, dated July 25, 1978, granted "as being part of original Lot No. 1, tract No. 2 * * * [b]eginning in the centerline of Hobart Road, 60 feet wide, at the northeasterly corner of land conveyed to Lester and Eveline Pummel," certain property, "containing 5.303 Acres of Land, 5.000 Acres excluding land contained within the right-of-way of said Hobart Road," from Raymond F. Evans to Arne and Nina Jean Obel. This deed warranted the land "free from all encumbrances whatsoever except * * * any utility or telephone line easements, restrictions and conditions of record."
 {¶ 47} Five additional deeds, containing the exact legal and metes-and-bounds descriptions as the aforementioned July 25, 1978 deed, transferred the property as follows:
 {¶ 48} July 20, 1979 — from Arne and Nina Jean Obel to Robert R. and Ellen R. McCalla, subject to "restrictions, easements and condtions of record."
 {¶ 49} August 20, 1979 — from Robert R. and Ellen R. McCalla to James and Beverly O'Connell, free of all encumbrances except "restrictions of record and any conditions, reservations and easements created in conjunction with such restrictions, including utility easements along the front and rear 15 feet of land conveying herein * * *."
 {¶ 50} May 27, 1981 — From James and Beverly O'Connell to James and Connie Bozell, subject to "restrictions, rights, reservations, easements (including pole line and utility easements) and conditions of record * * *." (emphasis added).
 {¶ 51} November 19, 1983 — From James and Connie Bozell to Robert and Sheila Ranallo, warranting that the land was "free from all encumbrances except restrictions of record."
 {¶ 52} Also attached to appellee's motion for summary judgment was the affidavit of Frank Carson, Advanced Real Estate Agent for FirstEnergy Corp., the holding company for appellee, which incorporated, by reference, "a list of easements, rights-of-way, and bills of sale." In his affidavit, Carson averred that this list was a business record kept in the ordinary course of FirstEnergy's business, which contained "grants by F.E. Drury, Chas. Otis and others, recorded in Volume 58, Pages 625 and 626 [of the Lake County Records] * * * [and] were conveyed from the Cleveland, Painesville Eastern Railroad Co. to CEI on April 3, 1926."
 {¶ 53} Appellants, with leave of court, were granted permission to supplement their motion for summary judgment with additional evidence to comport with that proffered by appellee in its motion for summary judgment. In their response brief, appellants included an affidavit from James Sayles, a professional engineer and surveyor, which stated, in relevant part as follows:
 {¶ 54} "Affiant * * * states that he has reviewed the legal descriptions contained on the various deeds, `pole line agreements' and other documents, certified copies of which are attached * * * and incorporated herein by reference. Specifically, affiant has reviewed the descriptions contained in the conveyances from F.E. Drury/Chas. A. Otis, et.al., to The Cleveland Painesville and Eastern Railroad Company * * *; The [easement grant from the] Cleveland Painesville and Eastern Railroad Company to the Cleveland Electric Illuminating Company (* * * CEI Grant) [dated April 3, 1926]; John Sherwin to J.D. Wright * * *; J.D. Wright to Raymond F. Evans * * *; Raymond F. Evans to Arne and Nina Jean Obel * * *; Arne and Nena Jean Obel to Robert R. McCalla and Ellen R. McCalla * * *; Robert R. McCalla and Ellen R. McCalla to James O'Connell and Beverly O'Connell * * *; James O'Connell and Beverly O'Connell to James Bozell * * *; James Bozell to Robert and Sheila Ranallo * * *; and Robert Ranallo to Sheila Ranallo * * *.
 {¶ 55} "Affiant has also reviewed a document identified as a `bill of sale' and dated April 3, 1926 * * *.
 {¶ 56} "Based upon my review of the descriptions contained [in the pole line agreements], affiant states to a reasonable degree of professional * * * certainty, a competent professional engineer could not reasonably be expected to locate the easements as described by the grants * * *.
 {¶ 57} "Affiant further states that a competent engineer utilizing the descriptions contained [in the pole line agreements] could not reasonably be expected to ascertain the dimensions or locate the easements as described * * *.
 {¶ 58} "Affiant further states that based upon his review of all documents annexed hereto, and specifically the Sherwin Grant[3] * * * nothing contained therein would lead a competent professional engineer to conclude that the property therein is the same property conveyed by John Sherwin pursuant to the Drury/Otis Grant [of the pole line easement to the Cleveland Painesville and Eastern Railroad Company].
 {¶ 59} "Affiant further states that based upon his review of the Drury/Otis Grant, * * * and based upon a reasonable degree of professional * * * certainty, the same property or easement was not conveyed by or as part of the CEI Grant * * *."
 {¶ 60} Sayles' affidavit also contained appellee's schedule of easements as contained in their motion for summary judgment.
 {¶ 61} In addition to all of the aforementioned items, appellants' original motion for summary judgment included the affidavit of Robert Ranallo, which averred that, pursuant to his purchase of the subject property on or about December 1, 1983, he obtained a commitment for title insurance, and that, based upon this commitment, which was attached to the affidavit and incorporated by reference, "any utility easements were within fifteen feet of the rear or front property lines."
 {¶ 62} The affidavit further averred that, around 1999, while researching the possibility of constructing a home on the property, Ranallo discovered the utility poles and wires on the property were located approximately 165 feet from the rear property line and approximately 385 feet from the front property line, and that he never consented or authorized the placing of the poles or wires on the property.
 {¶ 63} With respect to the issue of an express easement, appellee argues that the Drury and Otis deeds create an express easement in appellants' property for the purposes of erecting and maintaining utility poles and wires. Appellants, while not disputing that the deeds in question create a valid easement, argue that the affidavit of their expert witness, Sayles, considered with the other evidence in the record, demonstrates a genuine issue of material fact as to whether the easements in question apply to their property. We agree with appellants' position.
 {¶ 64} As mentioned earlier, summary judgment is only appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. Temple v.Wean United, Inc. (1977) 50 Ohio St.2d 317, 327, citing Civ.R. 56(C) (emphasis added).
 {¶ 65} Based upon the evidence of record at the time thetrial court decided the easement issue on October 21, 2003, there are a variety of conclusions that a reasonable jury may reach based on the evidence presented, not all of which are adverse to appellants.
 {¶ 66} Here, neither party disputes that the documents creating the easements in the April 1922 Otis and Drury Grants are valid. It is also clear from at least the Drury grant that John Sherwin was a party to this grant, as evidenced by his signature. However, "the extent of the easement granted or reserved by a deed depends primarily on a proper construction of the instrument. * * * `Surrounding circumstances may, however, be taken into consideration in order to ascertain the intention of the parties to the deed.'" Roebuck v. Columbia Gas TransmissionCorp. (1977), 57 Ohio App.2d 217, 223-224 (citation omitted).
 {¶ 67} Here, the Drury Grant covers "poles set in the ground, copper wires strung on cross arms attached thereto, on and along Bonnell Hill and Waite Hill to the John Sherwin Farm oppositeBrannon House." However, the Otis Grant covers poles and wires set on cross arms "on and along Waite Hill Road, from BrannonHouse to Cox Road and one Half mile south on Cox Road." The Drury Grant would seem to suggest that it terminates at the John Sherwin farm, and doesn't traverse the land itself. Moreover, the Otis Grant while it begins at Brannon House, which the Drury Grant indicates is opposite the John Sherwin farm, does not appear to contain the John Sherwin farm itself.
 {¶ 68} Although there is a reasonable inference, based upon the chain of title, that appellants' parcel may have been part of a farm once owned by John Sherwin, this does not, in and of itself, change the above analysis.
 {¶ 69} In support of the inference that the 1922 Drury and Otis pole line agreements may apply to appellants' property is Schedule B, attached to appellants' commitment for title insurance, incorporated by reference by the Ranallo affidavit, which makes mention of possible encumbrances as the result of pole line agreements "appearing in an instrument from F.E. Drury to the Cleveland Painesville and Eastern Railroad Company, dated April 14, 1922" and pole line agreements appearing in instruments "from Chas. A. Otis et.al. to The Cleveland, Painesville and Eastern Railroad Company, * * * filed for the record April 28, 1922 * * * [and] * * * April 23, 1923."[4] However, the title company noted that it made no examination relating to any of these pole line agreements.
 {¶ 70} Appellee correctly argues that a competent professional engineer is not required to describe an area "by metes and bounds" and that a description of property in a deed "is sufficient if it is such as to indicate the land intended to be conveyed, so as to enable a person to locate it." Roebuck,57 Ohio App.2d at 220. However, this is not appellants' argument. Appellants argue simply that "descriptions of real estate must be such that a competent engineer can locate the property conveyed." Id.
 {¶ 71} In the case sub judice, the affidavit of Sayles supports a reasonable conclusion that the 1922 Drury and Otis Grants do not involve easements affecting appellants' property. It is well-settled that in an exercise to determine whether or not summary judgment is appropriate, "a trial court may not weigh nor assess the credibility of the evidence." Steele v. AuburnVocational School Dist. (11th Dist. 1994), 104 Ohio App.3d 204,207, citing Perez v. Scripps-Howard Broadcasting Co. (1988),35 Ohio St.3d 215, 218. Thus, the trial court did not err by denying appellee's motion for summary judgment with regard to the issue of an express easement.
 {¶ 72} Appellee's first cross-assignment is without merit.
 {¶ 73} In its second cross-assignment of error, appellee contends that even if the pole line agreements are found defective for any particular reason, it was entitled to summary judgment due to a prescriptive easement on appellants' property. We disagree.
 {¶ 74} A party claiming a prescriptive easement must provide evidence "that the property is being used in a manner that is (a) open, (b) notorious, (c) adverse to the landowner's property rights, (d) continuous, and (e) for at least twenty-one years."Nice v. Marysville (1992), 82 Ohio App.3d 109, 113. {¶ 75}
Civ.R. 56(C) requires that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filedin the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added).
 {¶ 76} Appellee's first motion for summary judgment, arguing its entitlement to a prescriptive easement, relied solely on themention of an affidavit from Jennie Haldi, Associate Distributions Specialist for FirstEnergy, averring its ownership and maintenance of the poles and lines found on appellants' property. However, at the time this motion was filed, appellee never attached this affidavit, or the accompanying pole placement map. Thus, there was nothing in the record relied upon by appellee, at the time the first motion for summary judgment was decided, which would meet the evidentiary requirements of 56(C). See Dresher v. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-107
("the moving party bears the initial responsibility of informing the trial court of the basis of the motion, and identifyingthose portions of the record which demonstrate the absence of agenuine issue of fact on a material element") (emphasis sic). The inclusion of this affidavit and pole placement map with in aseparate motion for summary judgment made almost two years
after the issue of prescriptive easement was decided, fails to meet either the evidentiary or time requirements of Civ.R. 56(C).
 {¶ 77} Appellee's second cross-assignment of error is without merit.
 {¶ 78} Based upon the foregoing analysis, the judgment of the Lake County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.
Rice, J., concurs, O'Neill, J., concurs in judgment only.
[1] Appellee was added as a new party defendant via amended complaint, since they are the record owner of the utility poles and lines in question. In the original complaint, filed on October 10, 2001, the defendant was First Energy Corporation ("FirstEnergy"). There are allegations in both FirstEnergy's answer and appellee's motion for summary judgment which indicate that appellants had previously filed an action against FirstEnergy on July 7, 2000. This action was allegedly voluntarily dismissed by appellants while consideration of FirstEnergy's Motion for Summary judgment was pending. The record of this prior action is not before this court. Appellants subsequently dismissed the instant complaint against FirstEnergy, without prejudice, via a Notice of Dismissal filed with the trial court on March 15, 2002.
[2] Even if appellee had properly raised the issue of a license coupled with an interest, it did not demonstrate an absence of a genuine issue of material fact, as will become evident from our discussion of appellee's first cross-assignment of error.
[3] The reference to the "Sherwin Grant" in the aforementioned affidavit refers to the August 30, 1955 transfer of the 63.937 acre parcel from John Sherwin to J.D. Wright.
[4] The April 23, 1923 Pole Line Agreement appears to be a separate grant from Charles A. Otis recorded in Volume 71, page 210 of the Lake County Records, which is referenced in Page 3 of the notes, attached to Exhibit B of the title policy, referencing a "Right Of Way Contract" apparently signed by Charles A. Otis, John Sherwin, and one T.E. Borton, granting The Cleveland Painesville Eastern Railroad Company the consent "to erect and maintain a line of poles of such number and to be located in such places [along Waite Hill Road] along and in front of our premisesand across our property * * * and to string such necessary wires, equipment and appliances therto [sic] as may be necessary * * *." (Emphasis added). We note that this 1923 pole line agreement, was never submitted into evidence by appellee, and was not a part of the "schedule of easements" submitted to the trial court for review. Thus, there is no evidence in the record before the trial court on summary judgment that appellee possesses any interest in that particular Pole Line Agreement.