[Cite as *Dalliance Real Estate, Inc. v. Covert*, 2013-Ohio-4963.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

DALLIANCE REAL ESTATE, INC., et al.  :  **O P I N I O N**

Plaintiffs-Appellees,  :

- vs -  :  **CASE NO. 2013-G-3139**

TIMOTHY COVERT,  :

Defendant-Appellant.  :

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 08M000069.

Judgment: Reversed and remanded.

*A. Pearce Leary,* 401 South Street, Building 4-A, Chardon, OH 44024 (For Plaintiffs-Appellees).

*John W. Shryock,* John Shryock Co., L.P.A., 30601 Euclid Avenue, Wickliffe, OH 44092 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Timothy Covert, appeals from the Decision and Judgment Entry of the Geauga County Court of Common Pleas, entering judgment in favor of plaintiffs-appellees, Dalliance Real Estate and Margaret Lahner, on their Complaint. The issue to be determined by this court is whether an easement or a license existed when two parties signed an agreement stating that the buyer of a property had "perpetual" use of a driveway located on the seller's adjoining property and the buyer acted to improve the driveway and used it for several years. For the following

reasons, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

{¶2} Margaret Lahner and Timothy Covert entered into an Agreement of Purchase and Sale on August 15, 2003, in which Covert agreed to purchase one acre of real property from Lahner, located at 8829 Mayfield Road, in Geauga, Ohio, which was adjacent to another parcel owned by Lahner, located at 8825 Mayfield Road. The property at 8825 Mayfield was subsequently deeded to Dalliance Real Estate, which is owned by Lahner, a psychologist who operated her office on that property.

{¶3} On January 18, 2008, Dalliance Real Estate and Lahner filed a Complaint against Covert, raising several claims. Count One raised a claim for Quiet Title, asserting that Covert "has or may claim to have an interest" in a portion of property located at 8825 Mayfield Road, owned by Dalliance. Counts Two and Three raised claims for Ejectment and Trespass, asserting that Covert entered onto the property of Lahner and performed certain work, including the addition of electric lines and stone walls. Count Four requested an injunction to prevent further trespass. Count Five, for Breach of Contract, related to the use of a well located on Dalliance's property.

{¶4} On March 24, 2008, Covert filed his Answer and Counterclaim, raising six counterclaims. He raised a claim for Breach of Contract, and asserted that he was being denied his right to access the driveway located on Lahner's property, which he was entitled to use under an easement provided for in the Agreement of Purchase and Sale and the Deed. He also claimed Detrimental Reliance, based on improvements he made along the easement. He asked for Declaratory Judgment as to his rights regarding the easement.

2

**{¶5}** Following motions by both parties for restraining orders/injunctions, the court issued an Order for Preliminary Injunction on August 14, 2008, preventing Covert from interfering with Dalliance's property and also requiring Dalliance/Lahner to restore water service to Covert.

**{¶6}** A trial was held on February 7 and April 9, 2010. At trial, Attorney Matthew Dolan testified that he had represented both Covert and Lahner in the sale of the property. Pursuant to the Agreement of Purchase and Sale, prepared by Dolan and signed by Covert and Lahner on August 15, 2003, a condition to closing was that "Buyer and Seller shall have executed an easement agreement for the mutual use of the driveway on the Property, a copy of which is attached hereto and marked as Exhibit 'C.'" Pursuant to Lahner's testimony, no such exhibit was attached on the date she signed the Agreement.

**{¶7}** According to the testimony and exhibits, on September 9, 2003, Attorney Dolan sent letters to Covert and Lahner, advising them that a license agreement was enclosed and would replace an easement agreement previously signed by the parties. This agreement contained provisions that it was irrevocable, non-assignable, and was personal to Lahner and Covert. On September 19, 2003, another letter was sent to the parties, stating that Dolan had prepared a new Easement Agreement, "wherein Lahner would grant Covert a perpetual easement for ingress and egress to Covert's property," which would run with the land. On September 23, 2003, a third letter was sent to the parties, stating that the driveway agreement would be a license, which would be non-revocable.

**{¶8}** The Deed, which granted the 8829 Mayfield Road property to Covert, was

3

signed on September 25, 2003. Attached to the Deed was a separate, untitled document, which was also signed by both parties and prepared by Dolan. It stated that it was a "license agreement," and provided, inter alia, the following: "Lahner hereby grants, gives, and conveys a perpetual license and right-of-way over the License Parcel (defined below) to Covert and his tenants, servants, visitors, invitees, and licensees," the parties would split the cost of maintenance expenses for the driveway, neither party should obstruct the access of the other, and the agreement "shall be deemed perpetual, shall run with the respective parcels of the parties hereto and shall inure to the benefit of and be binding upon the parties * * * and their respective successors, transferees and assigns forever." It does not describe the specific location of the driveway, although it refers to an "Exhibit B" providing the description, which was not attached. It does state that the driveway was "partially located on Lahner's premises."

{¶9} Dolan testified that this license agreement was the result of discussions between himself and the two parties, who were told that if they wanted an easement, they would have to go before the Geauga Planning Commission. According to Dolan, both parties informed him that they did not want to do so, which resulted in him drafting the license agreement ultimately attached to the Deed.

{¶10} Jared Spring from the Geauga County Recorder's Office testified that the license agreement was attached to the Deed and that this was recorded as one instrument.

{¶11} Covert testified that he believed that he would be able to use the driveway on Lahner's property for his lifetime, that it would be perpetual, and any owner after him would also be allowed to use the easement. Due to this belief, he paved the driveway

4

and erected lighting and other items around it. He also constructed several buildings for his commercial business on his property, which were accessed using this driveway.

{¶12} Lahner testified regarding the various drafts of the easement/license agreement she received from Dolan prior to signing the Deed. She believed that a license agreement received on September 9, 2003, was the same license agreement that was attached to the Deed. She did not intend to give a perpetual right to use the driveway to Covert, but only a right to use it while either he or she owned their properties.

{¶13} Lahner also explained that there was another driveway located solely on Covert's property which had been used in the past, which was gravel, and was partially covered by grass. Covert explained that he was aware of an area, covered with grass, located on the east side of his property, which, if used as a driveway, would require him to drive over the septic system in his front yard.

{¶14} The trial court made various factual findings, restating the facts and testimony as described above, in its June 6, 2012 Decision. It also rendered a separate Judgment Entry on the same date, summarizing its holdings. The court found that the Agreement of Purchase was inaccurate, in that it misstated the address of the property being sold and improperly stated that the driveway being used by both parties was on Covert's property, while it was actually on Lahner's property. Further, although the Purchase Agreement stated that there was an attached Easement Agreement, no such document was attached.

{¶15} The court found that "although there had once been a driveway across [Covert's] parcel ([8829] Mayfield Rd.) that provided access to the dwelling, use of that

5

driveway had been discontinued and access to the dwelling was over and across a gravel driveway located upon the larger parcel ([8825] Mayfield Road)."[1]

{¶16} The court also found that, after the signing of the Agreement of Purchase, a document titled Easement for Common Driveway was submitted for pre-approval by the Geauga County Planning Commission, but it would not be approved without a hearing before the Commission. The court found that, although the license agreement referenced two exhibits, neither were attached or filed with the Geauga County Recorder. The court found that, according to Spring's testimony, the license agreement would not have been recordable without being attached to the Deed, since it did not have a title, contain a stamp that the Auditor approved it, or contain a legal description of the area subject to the license.

{¶17} The court found that "Covert and his employees have used the common driveway for access to [8829] Mayfield since the transfer of title." The court determined that Covert caused that driveway to be paved and sealed without giving notice to Lahner and built stone walls, an entrance, a sidewalk, and a pole lamp "within the license area" on or about the driveway, without Lahner's consent.

{¶18} As for its pertinent legal holdings, the court concluded that Covert building items on or near the driveway constituted trespass, ordered him to remove the items from the property, and scheduled a future damages hearing.

{¶19} Regarding the easement/license, the court held that the "purported License Agreement executed by Covert and Lahner is neither a license nor an easement" and, if they intended to create a license, there could be no requirement that

---

1. Although the court's Decision refers to the properties as 8225 and 8229 Mayfield Road, they are actually located at 8825 and 8829.

6

such a license be perpetual or transferable. The court found that the parties "clearly intended to create an easement" but did not obtain the proper approvals to record an easement. The court held that the license agreement for the common driveway is "void" and that Covert "shall be permitted to continue the use of that driveway until September 25, 2012; thereafter, Covert shall not be permitted to use the common driveway for ingress or egress" to his property.

{¶20} Covert filed his Notice of Appeal from the trial court's Judgment Entry on July 3, 2012. Since the trial court determined liability as to trespass but did not rule on damages, this court dismissed the appeal for lack of a final appealable order. *Dalliance Real Estate, Inc. v. Covert*, 11th Dist. Geauga No. 2012-G-3090, 2013-Ohio-538, ¶ 5.

{¶21} On March 11, 2013, Dalliance Real Estate filed a Notice of Voluntary Dismissal, dismissing the claim for damages. The Court ordered the claim dismissed on March 15, 2013.

{¶22} Covert raises the following assignments of error on appeal:

{¶23} "[1.] The trial court erred [by] ordering that the document entitled license agreement for a common driveway is void.

{¶24} "[2.] The trial court erred in failing to enforce an express easement in favor of appellant and against appellee regarding the use of the common driveway.

{¶25} "[3.] The trial court erred in failing to find an implied easement in favor of appellant and against appellee regarding the use of the common driveway.

{¶26} "[4.] The trial court erred in failing to find an easement by estoppel in favor of appellant and against appellee regarding the use of the common driveway.

{¶27} "[5.] The trial court erred in determining that appellant has an easement of

7

temporary duration over appellee's property."

{¶28} Covert's arguments generally relate to his assertion that the trial court inappropriately determined that the signed license agreement, attached to the Deed and recorded, was void and that no easement existed over the driveway, the court's denial of his request for declaratory judgment on this issue, and the finding in favor of Dalliance and Lahner.

{¶29} The standard of review applied to easements "is whether the trial court's judgment is supported by some competent, credible evidence going to all the essential elements of the case." (Citation omitted.) *Sweet v. Caudill*, 11th Dist. Portage No. 2004-P-0095, 2006-Ohio-1009, ¶ 12. "We presume the trial court's findings of fact are correct, since the trier of fact is charged with evaluating evidence and credibility." *Id.* Any questions of law related to an easement, however, are reviewed by this court de novo, without deference to the trial court's conclusion. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34.

{¶30} In his first and second assignments of error, Covert argues that the trial court erred in finding that the license agreement was void, since the agreement was an express easement which granted a perpetual right of way to Covert and stated that it would run with the parcels. He also argues in his fourth assignment of error that Lahner's signature of the foregoing agreement and her acquiescence to his improvements are the basis for a finding of easement by estoppel.

{¶31} Dalliance and Lahner argue that the license agreement was void because a license cannot be irrevocable and run with the land. They also assert that there is no easement by estoppel, since Lahner did not mislead Covert into believing that he had

8

an easement.

{¶32} An "easement is an interest in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists. * * * An easement implies necessarily a fee in another, and it follows that it is a right, by reason of such ownership, to use the land for a special purpose * * * not inconsistent with the general property in the land of the owner of the fee, his property rights, however, to be exercised in such way as to not unreasonably interfere with the special use for which the easement was acquired." (Citation omitted.) *Ranallo v. First Energy Corp.*, 11th Dist. Lake No. 2005-L-187, 2006-Ohio-6105, ¶ 36; *Pence v. Darst*, 62 Ohio App.3d 32, 37, 574 N.E.2d 548 (2nd Dist.1989) ("[i]n order to create an express easement, the owner of the servient property must grant or convey to the owner of the dominant property a right to use or benefit from his estate").

{¶33} In contrast, a license "is a privilege given to an individual to do an act upon the land of another without possessing any interest therein and is usually terminable at the will of the licensor." *Cambridge Village Condominium Assn. v. Cambridge Condominium Assn.*, 139 Ohio App.3d 328, 333, 743 N.E.2d 954 (11th Dist.2000), citing *Mosher v. Cook*, 62 Ohio St.2d 316, 317, 405 N.E.2d 720 (1980). If the parties intend for an agreement to be permanent, the license is said to be coupled with an interest. *Contract Crush and Screen Co. v. Neff Sand & Gravel, Inc.*, 11th Dist. Lake No. 96-L-043, 1997 Ohio App. LEXIS 832, 8 (Mar. 7, 1997). "A license coupled with an interest becomes irrevocable, meaning that it is no longer terminable at the will of the licensor, and constitutes a right to do the act rather than a mere privilege to do it. * * * An irrevocable license is said to be an easement rather than a license." *Cambridge Village*

9

at 333-334.

{¶34} "Licenses coupled with an interest can be, in effect, easements which either have not complied with the formalities necessary to create an easement or easements by parol agreement. This is because there is not merely permission to do the act, but a right to do the act. If so construed to be a right it takes on those qualities. One such quality of a right is that it is not revocable. * * * Licenses coupled with an interest have been found where an easement was not formed but yet the contract was not revocable at the will of either party and the parties' intention was that the contract was to be permanent and perpetual." (Citation omitted.) *Kamenar RR. Salvage, Inc. v. Ohio Edison Co.*, 79 Ohio App.3d 685, 691, 607 N.E.2d 1108 (3rd Dist.1992).

{¶35} A review of the agreement attached to the Deed reveals that it contains no language consistent with a conclusion that Covert's ability to use the driveway was terminable at the will of Lahner. The language of the agreement stated that it was perpetual and should run with the parcels of land. Covert's use of the driveway was specifically referred to as a "right," not a privilege, and could not be prohibited in any way. At the very least, it must be considered a license coupled with an interest, since the agreement evinces an intent for the use to be permanent and irrevocable. This is consistent with the trial court's determination that the parties' agreement had the attributes of an easement. Since the document was not a license but a license coupled with an interest, it should be considered, like an easement, to be irrevocable and should not have been voided and terminated by the trial court.

{¶36} While Lahner argues that the agreement attached to the Deed cannot be considered an easement because the parties did not go before the planning committee,

10

no case law is cited in support of this proposition. As noted above, a license coupled with an interest can be interpreted as an easement without complying with all of the rules or formalities of establishing an easement. *See Kamenar* at 691.

{¶37} Lahner also argues that since the document attached to the deed referred to a license throughout and did not use the word easement, it is "not clearly an easement." However, the mere use of the word license does not render a document a revocable license when language is included to support the conclusion that the parties intended to create a more permanent right to access the property, i.e., a license coupled with an interest or an easement. *See Steiner v. Delong*, 5th Dist. Tuscarawas No. 88 AP 050040, 1988 Ohio App. LEXIS 5100, 4 (Dec. 14, 1988) (although the language included in the deed referred to a license and not an easement, the inclusion of language that grants the "right, title and license" evinced the intent of the parties to convey an easement). No specific words are required to create an easement, provided the intent of the parties is clear from the document and formal statutory requirements, including a signed writing, are followed. *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 11th Dist. Lake No. 2003-L-192, 2005-Ohio-3398, ¶ 24; *Cincinnati Entertainment Assocs. Ltd. v. Bd. of Commrs. of Hamiltion Cty.*, 141 Ohio App.3d 803, 813, 753 N.E.2d 884 (1st Dist.2001).

{¶38} Here, the agreement conveyed the intent of the parties, even if it did not specifically include the word "easement." Further, the parties complied with the requirement to have the agreement in writing and to have the signature properly witnessed by a notary. *See H&S Co., Ltd. v. Aurora*, 11th Dist. Portage No. 2003-P-0104, 2004-Ohio-3507, ¶ 12; R.C. 5301.01(A).

11

{¶39} Further, even if the foregoing reasons were not sufficient to establish an irrevocable right in Covert to continue his access to the driveway, there is also support for a finding that, in the interest of equity, an easement by estoppel exists. An easement may be created by estoppel when the "owner of land, without objection, permits another to expend money in reliance upon a supposed easement, when in justice and equity the former ought to have disclaimed his conflicting rights," in which case, the "owner is estopped to deny the easement." *Gnomes Knoll Farm, Inc. v. Aurora Inn Operating Partnership, L.P.*, 11th Dist. Geauga Nos. 93-G-1772 and 93-G-1780, 1994 Ohio App. LEXIS 2904, 22 (June 30, 1994), citing *Monroe Bowling Lanes v. Woodsfield Livestock Sales*, 17 Ohio App.2d 146, 244 N.E.2d 762 (7th Dist.1969), paragraph two of the syllabus. "The party claiming the easement must show that he was misled or was caused to change position to his prejudice." *Id.*

{¶40} In the present matter, Lahner signed a document, attached to the Deed and recorded, in which she agreed that Covert would have a "perpetual right" to use the driveway located on her property and that this right would run with the parcel to the parties' "successors, transferees and assigns forever." Lahner also signed the Agreement of Purchase, which stated that the buyer and seller "shall have executed an Easement Agreement for the mutual use of the driveway." These were promises made to Covert and constitute a basis for applying the doctrine of estoppel. *See Prymas v. Kassai*, 168 Ohio App.3d 123, 2006-Ohio-3726, 858 N.E.2d 1209, ¶ 27-28 (8th Dist.) (the evidence supported a finding of easement by estoppel when there were letters and other evidence of negotiations of an easement and the parties negotiated improvements that would be done in return for the right to the easement).

{¶41} Covert relied on these statements that the driveway would be perpetually his to use. He then proceeded to have the driveway graded and paved, without any objection from Lahner. In fact, the signed agreement specifically stated that Covert shall pay for the cost of paving and that such work "shall be completed within eighteen (18) months of the execution of this License Agreement." He also expended additional money with many other improvements all along the driveway, placing several buildings used for his business in positions accessible to the driveway, based on how he "expected [he] would be using it" and his belief that he had an easement over the driveway. Lahner did not object to these improvements at the time they occurred.

{¶42} It would be unfair and unjust to simply determine, as the trial court did, that Covert can no longer access the driveway because the agreement does not neatly fit into the category of either a license or an easement. The parties clearly had an agreement that extended beyond a mere license and Covert's access to the driveway cannot be terminated simply based on Lahner's request to do so. Such a conclusion would inhibit not only Covert's right to use the driveway he had improved but also limit his access to the property entirely since the other driveway on his property, as found by the trial court, had not been used for a period of years and its accessibility was questionable.

{¶43} Based on the foregoing, we find that Covert has an easement over the driveway on Lahner's property and that the trial court erred in its determination that the agreement attached to the Deed was void.

{¶44} The remaining issue relates to defining the area and location of the easement, which is not stated in the deed or attached agreement. There was some

13

testimony and evidence presented regarding the driveway measurements, but the trial court did not make a determination as to the area of the easement since it decided the agreement was void. When the "intended dimensions of an easement are not expressed in the grant itself, determining the dimensions becomes largely a question of fact[.]" (Citation omitted.) *Pomante v. Marathon Ashland Pipe Line LLC*, 187 Ohio App.3d 731, 2010-Ohio-1823, 933 N.E.2d 831, ¶ 10 and 20 (10th Dist.) (remanding to the trial court when the dimensions of the easement were undefined in the grant, noting that "determining the dimensions largely presents issues of fact to be determined on a case-by-case basis"). Therefore, this matter is remanded for the purpose of the trial court issuing findings as to the location and description of the easement.

{¶45} Covert's first, second, and fourth assignments of error are with merit.

{¶46} Since we have found grounds for Covert's argument that the trial court erred in denying his access to the driveway, the third and fifth assignments of error, which provide additional reasons for finding that an easement existed, are moot.

{¶47} For the forgoing reasons, the Decision and the Judgment Entry of the Geauga County Court of Common Pleas, entering judgment in favor of Dalliance Real Estate and Lahner, are reversed and the matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellees.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.