[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Seabolt v. State Hwy. Patrol Retirement Sys.,* Slip Opinion No. 2019-Ohio-1594.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1594

THE STATE EX REL. SEABOLT, APPELLANT, *v.* STATE HIGHWAY PATROL RETIREMENT SYSTEM, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Seabolt v. State Hwy. Patrol Retirement Sys.,* Slip Opinion No. 2019-Ohio-1594.]

*Mandamus—Writ sought to compel Ohio Highway Patrol Retirement System Board to vacate its finding that relator's disability was not caused in the line of duty—Court of appeals did not abuse its discretion in denying writ of mandamus—Court of appeals' judgment affirmed.*

(No. 2018-0695—Submitted January 29, 2019—Decided May 1, 2019.)

APPEAL from the Court of Appeals for Franklin County, No. 17AP-52, 2018-Ohio-1377.

_____

**Per Curiam.**

{¶ 1} Appellant, Benjamin R. Seabolt, appeals the judgment of the Tenth District Court of Appeals denying his request for a writ of mandamus against

appellee, the State Highway Patrol Retirement System ("HPRS" or "the board"). We affirm.

**Factual and Procedural Background**

{¶ 2} Seabolt became a state trooper in 2007. As a trooper, Seabolt regularly wore a service belt that weighed approximately 22 to 25 pounds. According to Seabolt, the service belt, also referred to as a "utility belt" or "gun belt," included Seabolt's firearm, ammunition, handcuffs, Taser, and flashlight.

{¶ 3} Between January 2013 and April 2016, Seabolt was treated for lower-back pain by four medical professionals. Dr. Christian Gedeon, a chiropractor, recommended that Seabolt avoid wearing his service belt and concluded that Seabolt's "pain [wa]s directly and casually related to his work." Dr. Jed Bell, an osteopath, opined that the weight of Seabolt's service belt "more likely than not" caused "a disc bulge at the L5-S1 level * * * and associated low back and radiating leg pain." Dr. Ying Chen, a neurological spine surgeon, examined Seabolt and noted that his pain "began without any specific accident, injury, or fall, although he does wear a utility belt as a police officer and does frequent bending, lifting, and getting in and out of the car, which does seem to aggravate his symptoms." Finally, Dr. Christian Bonasso, a neurosurgeon, diagnosed Seabolt with an "L5-S1 disk space collapse and right-sided disk bulge" and recommended spinal surgery. Dr. Bonasso concluded that the weight of Seabolt's service belt and getting in and out of the cruiser "thousands of times over the course of his career" had caused Seabolt's disc bulge and collapse.

{¶ 4} In June 2016, Seabolt applied to HPRS for permanent and total disability-retirement benefits based on the diagnosis of the L5-S1 disc collapse and right-side disc bulge, as well as disintegration of L5-S1 vertebrae and arthritis. Seabolt claims an onset date of December 22, 2015.

{¶ 5} In July 2016, Dr. Michael Griesser, an orthopedic surgeon, conducted an independent medical examination and diagnosed Seabolt with "L5-S1 disc

protrusion and degenerative disc disease at L5-S1." He agreed with Dr. Bonasso that Seabolt would likely need a surgical fusion and concluded that "Seabolt [wa]s totally and permanently disabled from working for the Ohio State Highway Patrol" and unable to perform his duties as a trooper. Dr. Griesser observed no significant change between Seabolt's 2013 MRI and his 2016 MRI.

{¶ 6} HPRS's medical advisor, Dr. David Tanner, reviewed Seabolt's medical records and HRPS's file and agreed with Dr. Griesser's medical opinion that Seabolt was totally and permanently incapacitated and could no longer perform his job duties as a trooper. However, Dr. Tanner maintained that "Seabolt's conditions did not occur in the line of duty" and that they were "congenital and degenerative in nature and were pre-existing prior to the 12/22/15 date." Dr. Tanner also stated that he did not believe there was "any substantial aggravation of this pre-existing condition as the Lumbar MRI's from 2/1/16 and 10/3/13 indicate[d] no significant change in comparison."

{¶ 7} The HPRS Health, Wellness, and Disability Committee ("the committee") approved Seabolt's disability but concluded that his condition did not occur "in the line of duty." Had the committee concluded that Seabolt was disabled "in the line of duty," he would have received a higher monthly payment. R.C. 5505.18(B).

{¶ 8} Seabolt requested reconsideration and presented supplemental medical evidence, including reports and progress notes from Drs. Gedeon, Bonasso, and Bell. Dr. Chen's progress notes were also attached to Seabolt's reconsideration request.

{¶ 9} Dr. Tanner reviewed Seabolt's supplemental evidence and concluded that it was unpersuasive. He noted Dr. Chen's conclusion that Seabolt's pain " 'began without any specific accident, injury or fall, although he does wear a utility belt as a police officer and does frequent bending, lifting and getting in and out of the car.' " Dr. Tanner again concluded:

Given the review of the recent medical records submitted, diagnostic evaluation to indicate congenital structural conditions of Trooper Seabolt's spine, diagnostic evaluation to indicated [sic] degenerative endplate disease, foraminal stenosis, degenerative disc disease, lack of diagnostic MRI changes to indicate "substantial aggravation" of a pre-existing condition (Lumbar MRI's 2013 to 2016) and the medical opinion that the probability of an essentially healthy 31 year old male having a service belt cause these degenerative changes within a 9 year window is medically improbable and thus not in the line of duty.

{¶ 10} The committee voted to deny Seabolt's motion for reconsideration and to confirm the original recommendation that Seabolt's injury did not occur in the line of duty. The board agreed and voted "[t]o confirm the original recommendation by the [c]ommittee of an off-duty disability."

{¶ 11} On January 20, 2017, Seabolt filed a complaint for a writ of mandamus in the Tenth District Court of Appeals, seeking an order compelling HPRS to vacate its finding that his disability was "not in the line of duty" and to grant disability retirement "in the line of duty."

{¶ 12} The Tenth District referred the matter to a magistrate, who recommended denying the writ because Dr. Tanner's reports "provide[d] the HPRS board with 'sufficient evidence' (or 'some evidence') to support its determination that relator is disabled but not in the line of duty." 2018-Ohio-1377, ¶ 55. The court of appeals adopted the magistrate's findings of fact and conclusions of law and denied Seabolt's request for a writ of mandamus. Seabolt appealed.

**Legal Analysis**

**{¶ 13}** The administration of HPRS is vested in the board. R.C. 5505.04(A)(1). A member of the highway patrol "who becomes totally and permanently incapacitated for duty in the employ of the state highway patrol may be retired on disability by the board." R.C. 5505.18(A). The disability may be either in the line of duty or not. Ohio Adm.Code 5505-3-02(A)(4) through (5). When making the determination regarding retirement eligibility on the basis of a disability, the board "shall consider the written medical or psychological report, opinions, statements, and other competent evidence in making its determination." R.C. 5505.18(A).

**{¶ 14}** Mandamus is the appropriate remedy to correct an abuse of discretion by HPRS because the General Assembly did not provide a statutory right of appeal from the board's determinations of disability benefits, *see* R.C. 5505.18(A) ("The board shall determine whether the member qualifies for disability retirement and its decision shall be final"); *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, 879 N.E.2d 195, ¶ 6 (mandamus is an appropriate remedy when no statutory right of appeal exists). To obtain a writ of mandamus, Seabolt must establish, by clear and convincing evidence, that he has a clear legal right to the requested relief, that the board has a clear legal duty to provide it, and that Seabolt lacks an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

**{¶ 15}** To establish a clear legal right to the requested disability-retirement benefits and a clear legal duty on the part of HPRS to provide them, Seabolt must prove that the board abused its discretion when it decided that his disability did not occur in the line of duty. *Grein* at ¶ 7. An abuse of discretion exists when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, 909 N.E.2d 610,

¶ 11. Under this deferential standard, Seabolt cannot prevail so long as "some evidence" exists to support the board's decision. *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, 991 N.E.2d 218, ¶ 26-27. Only when the board's "decision is not supported by *any* evidence will mandamus lie." (Emphasis sic.) *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, 43 N.E.3d 426, ¶ 17. And "the presence of contrary evidence is immaterial, so long as the 'some evidence' standard has been met." *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, 788 N.E.2d 1053, ¶ 29.

{¶ 16} Ohio Adm.Code 5505-3-02(A)(4) defines "in the line of duty" to mean "an illness or injury that occurred during or resulted from the performance of official duties under the direct supervision of the state highway patrol." Conversely, "not in the line of duty" means "an illness or injury that did not occur during or result from the performance of official duties under the direct supervision of the state highway patrol." Ohio Adm.Code 5505-3-02(A)(5). Ohio Adm.Code 5505-3-02(A)(5) establishes a rebuttable presumption that a disability did not occur "in the line of duty":

> Unless the illness or injury meets the presumption criteria outlined in division (A) of section of section [sic] 5505.18 of the Revised Code [relating to chronic heart disease] or competent and credible evidence is submitted to HPRS, a disability condition is presumed to be not in the line of duty.

{¶ 17} While the presumption may be rebutted with "competent, credible evidence," *Evans v. Natl. Life and Acc. Ins. Co.*, 22 Ohio St.3d 87, 92, 488 N.E.2d 1247 (1986), the board "is solely responsible for assessing evidentiary weight and credibility, and a reviewing court should not independently reweigh the medical

evidence," *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, 43 N.E.3d 426 at ¶ 17.

{¶ 18} Seabolt argues that he presented competent and credible evidence that his disability occurred in the line of duty and thus that he did rebut the presumption but that the board abused its discretion by disregarding the credible medical evidence and by arbitrarily concluding that his back pain did not occur in the line of duty. As Seabolt notes, three medical professionals concluded that his condition occurred in the line of duty: Dr. Gedeon (chiropractor), Dr. Bell (osteopath), and Dr. Bonasso (neurosurgeon). But Dr. Chen, a neurological spine surgeon, noted that Seabolt's back pain began without any specific accident, injury, or fall. Although Dr. Chen acknowledged that Seabolt's service belt seemed to aggravate his symptoms, aggravating a condition is different from causing the condition in the first instance.

{¶ 19} After reviewing this evidence, the board's medical advisor, Dr. Tanner, concluded that Seabolt's conditions did not occur in the line of duty because the conditions were congenital and degenerative and they had existed prior to the date of onset that Seabolt had stated in his disability application. And after reviewing the new materials that Seabolt submitted with his application for reconsideration, Dr. Tanner concluded that it was "medically improbable" for the weight of a service belt to cause such changes to the spine of an "essentially healthy" young man within the span of nine years.

{¶ 20} Despite this evidence, Seabolt challenges the board's determination by arguing that Dr. Griesser, the orthopedic surgeon who conducted an independent medical examination, failed to comply with R.C. 5505.18(A)(3), which requires "a competent health-care professional * * * appointed by the board" to submit a written report that includes "[t]he cause of the member's incapacity." Seabolt argues here—as he did in the court of appeals—that Dr. Griesser's failure to determine whether Seabolt's incapacity occurred in the line of duty was a failure to

determine the cause of his incapacity. The magistrate and the court of appeals disagreed with this argument, noting that Dr. Griesser identified the cause of Seabolt's incapacity—L5-S1 disc protrusion and degenerative disc disease—and that Dr. Griesser was not required by R.C. 5508.18(A) or Ohio Adm.Code 5505-3-02(D) to determine the "mechanism of the injury." 2018-Ohio-1377 at ¶ 16, 74.

{¶ 21} Regardless of whether Dr. Griesser was required to state that Seabolt's injury happened in the line of duty or not in the line of duty, some evidence exists that Seabolt's incapacity did not happen in the line of duty. Dr. Tanner noted that because Seabolt's MRIs showed little change between 2013 and 2016, a "substantial aggravation of [Seabolt's] pre-existing condition" had not occurred. In addition, Dr. Chen concluded that Seabolt's back pain began *without any specific injury*. Because this evidence is sufficient to support the board's decision that Seabolt's injury was not in the line of duty, the board did not abuse its discretion. *See Grein*, 116 Ohio St.3d 344, 2007-Ohio-6667, 879 N.E.2d 195, at ¶ 11 (finding HPRS did not abuse its discretion because sufficient evidence existed to support its decision denying former state trooper disability-retirement benefits).

{¶ 22} Seabolt also argues that the court of appeals erred when it adopted the magistrate's analysis, which relied on a recently adopted provision in the Administrative Code, Ohio Adm.Code 5505-3-02(E), to find that Seabolt's arguments did not have merit. That provision requires that the board's medical advisor (Dr. Tanner) review the medical evidence and make a report that includes whether the disability occurred in the line of duty. The medical advisor's report "shall be considered an independent medical opinion." Ohio Adm.Code 5505-3-02(E)(3). Seabolt argues that the magistrate's reliance on Ohio Adm.Code 5505-3-02(E) was misplaced because that provision, which became effective in May 2017, was not in effect at the time of Seabolt's medical examinations. Indeed, regardless of the applicability of the new rule, Seabolt has failed to show that the

board abused its discretion when it found that his injury did not occur in the line of duty.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Haynes, Kessler, Myers & Postalakis, Inc., Marc E. Myers and Eric V. Hershberger, for appellant.

Dave Yost, Attorney General, and John J. Danish and Mary Therese J. Bridge, Assistant Attorneys General, for appellee.

_____