[Cite as *Videkovich Farmland of Ohio, L.L.C. v. Woolever Family, L.L.C.*, 2020-Ohio-792.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| Videkovich Farmland of Ohio LLC[1] An Ohio Limited Liability Company, et al., | : | Case No. 19CA9 |
| | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| Woolever Family LLC An Ohio Limited Liability Company, et al., | : | |
| | : | RELEASED 3/2/2020 |
| Defendants-Appellants. | : | |

_____

APPEARANCES:

James R. Kingsley, Circleville, Ohio, for appellants.

Richard T. Ricketts and Andrew C. Clark, Ricketts & Clark Co., LPA, Pickerington, Ohio, for appellees.

_____

Hess, J.

{¶1}    Woolever Family, LLC, Rachel Meyer as Successor Trustee of the Ralph H. Woolever Revocable Trust executed 8/23/2007, Ralph B. Woolever, Rachel Meyer, Crystal Woolever, and Joan Matteson (collectively the "Woolevers") appeal from a judgment of the Pickaway County Court of Common Pleas in a partition action instituted by Videkovich Farm Land of Ohio LLC, C. Ray Noecker, and Donna Noecker (collectively the "Noeckers").  The Woolevers maintain that the trial court erred in its apportionment of attorney fees and a survey fee.  For the reasons that follow, we reject their contentions and affirm the trial court's judgment.

---

[1] The trial court spelled the name of the entity this way in its March 7, 2019 judgment entry; however, the name appears to be Videkovich Farm Land of Ohio LLC.

## I.  FACTS AND PROCEDURAL HISTORY

{¶2}    In 1967, Ralph H. Woolever and Charlene Woolever, husband and wife, purchased an approximately 157-acre farm in Pickaway County, Ohio.  The couple had five children—Ralph B. Woolever, Rachel Meyer, Joan Matteson, Crystal Woolever, and Karen Hovis. In 1981, the couple conveyed 0.9997 acres to Karen Hovis and her husband, Gary.  In 2007, Charlene Woolever died testate. Ralph H. Woolever disclaimed his interest in his wife's undivided 50% interest in the farm, and it passed to the couple's children, resulting in each child owning an undivided 10% interest in the farm.

{¶3}    On August 23, 2007, Ralph H. Woolever created the Ralph H. Woolever Revocable Trust and transferred his undivided 50% interest in the farm to himself in his capacity as trustee.  Under the terms of the trust, after Ralph H. Woolever died, Ralph B. Woolever would have the option to rent his father's house and continue renting the farmland pursuant to a lease for 15 years. After 15 years, the children, as trust beneficiaries, could purchase the property for 90% of its appraised value.  Once Ralph H. Woolever created the trust, Ralph B. Woolever, Rachel Meyer, Joan Matteson, and Crystal Woolever (the "Woolever Siblings") created Woolever Family, LLC, transferred their interests to it, and agreed to honor the trust terms in their management of the LLC. Karen Hovis retained her interest. Thus, the trust and LLC collectively owned an undivided 90% interest in the farm, and Karen Hovis owned an undivided 10% interest.

{¶4}    In 2009, Ralph H. Woolever amended the trust terms to provide that if Karen Hovis failed to convey her interest in the farm to Woolever Family, LLC within 90 days of his death, she would be treated as if she had predeceased him and any bequest or devise to her would be retained for the benefit of her issue.  Ralph H. Woolever died in

2011. In February 2015, Karen Hovis conveyed half of her undivided 10% interest to Videkovich Farm Land of Ohio LLC, which is managed by Michael Videkovich, and the other half to his in-laws, C. Ray Noecker and Donna Noecker.

{¶5}   In March 2015, the Noeckers filed suit against Woolever Family, LLC and Rachel Meyer in her capacity as successor trustee of the trust (collectively the "Woolever Entities").  The Noeckers sought partition of the farm, their share of rents and profits derived from the farm, and attorney fees and expenses. Later, the court joined the Woolever Siblings and Hovises as defendants, and the Woolevers asserted a counterclaim against the Noeckers and cross-claim against the Hovises.  The Woolevers sought a declaratory judgment that title to the farm was encumbered by the trust terms and that Karen Hovis had forfeited her interest in the trust.  They asserted a cross-claim against Karen Hovis for (1) ejectment from approximately three acres the Hovises had "appropriated to their personal use" by building a stable, maintaining a pony, and planting trees; (2) removal of a waterline between the Hovises' house and a farm well; and (3) an accounting of rents and profits for the Hovises' use of the farm.  They also asserted claims for intentional interference with expectation of inheritance and intentional interference with contract.  According to the Woolevers, Ralph H. Woolever only disclaimed his inheritance because his children said they would convey their interests to Woolever Family, LLC, Karen Hovis' representation was false, and her conveyance to the Noeckers interfered with the Woolever Siblings' expectation of inheritance, caused the Woolevers to have to defend the trust terms and Ralph B. Woolever lease, and could result in the loss of his rental rights.  Karen Hovis claimed she never agreed to convey

her interest to Woolever Family, LLC, and the Hovises filed cross-claims against the Woolevers.

{¶6} The Noeckers moved for summary judgment on their partition claim, and the Hovises moved for summary judgment on the cross-claims by and against them. The Woolevers opposed the motions. Later, the Woolevers and Hovises dismissed their "claims and cross-claims" with prejudice, and the court issued an agreed entry regarding partition that was signed by counsel for the Noeckers, Woolevers, and Hovises. The court appointed three commissioners and ordered the Noeckers and Woolevers to meet with them "to discuss a mutually agreed upon partition." If they could not agree on a partition in kind "along with: (i) any owelty payment associated therewith; (ii) an accounting and reconciliation of income and expenses for prior years; and (iii) a negotiated amount of attorney's fees to [the Noeckers], on or before December 31, 2017," the commissioners would proceed with their statutory partition duties. If the property was partitioned in kind, the Noeckers' portion would be "conveyed free and clear of any claims or interests of all individuals or entities whatsoever." If the property could not be partitioned in kind "without manifest injury to its value," the property would be sold and the court would determine any "clouds on title" before a public sale. The entry stated the Hovises stipulated they had no interest in the property. The entry also stated it was:

> **ORDERED, ADJUDGED AND DECREED** that, if settled, the costs and expenses of the Commissioners and the fees and expenses of the Partition Action, including [the Noeckers'] legal fees and expenses, shall be borne by the Parties in accordance with [t]heir Respective Interests in the Property; it is further

> **ORDERED, ADJUDGED AND DECREED** that, if there is no settlement the entitlement to and payment of the fees of [the Noeckers']

counsel (including those of [their original attorney]) in respect of this Partition Action shall be determined by further order of the Court, in accordance with Pickaway County Local Rule 17.01, subject to objection[.]

**{¶7}** The Noeckers and Woolevers did not reach an agreement before the end of 2017. In March 2018, the commissioners recommended a partition in kind in which the Noeckers would receive part of the north end of the farm. The parties rejected this and submitted counterproposals. The commissioners recommended the Noeckers' "alternate south proposal," i.e., the Noeckers would get 16.2 acres from the south end of the farm with about 385.4 feet of road frontage and a waterway as the western boundary. Subsequently, the parties stipulated the farm's fair market value was $810,000 and agreed to a physical partition whereby the Noeckers would get a "certain 16.2 acre tract as generally described" in their alternate south proposal. They agreed on some financial matters, such as that the parties would pay for a survey of the 16.2 acre tract "in accordance with the 90%/10% Interests." However, they disagreed about whether the Woolevers were entitled to setoffs for certain expenses and about the issue of attorney fees. They stipulated:

> Based on the appraised value of the Property by the Commissioners, [t]he total amount of attorney's fees to be paid in this partition action pursuant to Local Rule 17.01, RC §5307.25 and the case law pertaining thereto * * * are capped at the amount of $33,900.
>
> * * * The itemized statements of counsel shall be admitted into evidence without objection and the hourly rates stated therein are stipulated to be reasonable.
>
> * * * Plaintiffs' counsel and Defendants' counsel will take the witness stand and provide a statement of their respective opinion of the amount of the attorney's fees that should be awarded by the Court pursuant to applicable law and/or they believe benefitted the partition and should be awarded by the Court, subject to cross-examination by opposing counsel.

{¶8} The court conducted a hearing on attorney fees and setoffs. The Noeckers submitted evidence that they had incurred "in excess of $33,900" in attorney fees and expenses. The Woolevers submitted evidence that they had incurred $30,718.50 in attorney fees and expenses. The court found that the Woolevers were entitled to only some requested setoffs and that the Noeckers were entitled to $33,900 for "legal fees which shall be taxed as costs of this proceeding, and which shall be paid ten percent (10%) by the Plaintiffs and ninety percent (90%) by the Defendants." The court did not tax as costs any of the Woolevers' legal fees.

{¶9} The court issued a final judgment entry that ordered the Woolever Entities to convey their interest in the 16.2 acres to the Noeckers by quitclaim deed disclaiming any rights of the Woolevers to the property. The court ordered the Noeckers to convey their interest in "the remaining 140.418 acre parent tract" to Woolever Family, LLC and declared that the terms of the trust were "valid and binding upon the parent acreage retained by the Trust and the LLC and shall run with the land." The court found the Woolever Entities owed the Noeckers $30,510 for attorney fees, i.e., 90% of $33,900. The court found that the Noeckers had paid $1,800 for a survey of the entire farm and that the Woolevers had to reimburse them 90% of that amount. The court dismissed with prejudice any claims not specifically addressed in its entry.

## II. ASSIGNMENT OF ERROR

{¶10} The Woolevers assign one error for our review: "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN THE APPORTIONMENT OF DAMAGES."

### III.  ATTORNEY FEES

**{¶11}** First, the Woolevers challenge the attorney fee determination.  The trial court did not specify which provision on attorney fees in the agreed entry it applied, but even if we agreed with the Woolevers that the second provision applied, i.e., the court had to determine "the entitlement to and payment of the fees of [the Noeckers'] counsel * * * in accordance with Pickaway County Local Rule 17.01, subject to objection," and that the Woolevers did not waive the right to seek payment of defense counsel's fees, they have not shown the court erred in its fee determination.  [R. 134; Appellant's Br. 13-14]

**{¶12}** Loc.R. 17.01 of the Court of Common Pleas of Pickaway County, General and Domestic Relations Division states:

(A)     Attorneys' Fees

Pursuant and subject to R.C. 5307.25, counsel fees in partition actions are fixed as follows:  For the first fifty thousand dollars ($50,000.00) of the value, as determined in said action, of the said real estate, at the rate of six percent (6%); all above that sum, and not exceeding one hundred thousand dollars ($100,000.00) at the rate of five percent (5%); all above that sum, at the rate of four percent (4%).

(B)     Extraordinary Compensation

Compensation for extraordinary services and for expenses may be awarded upon application to and approval of the trial judge and only upon notice to opposing parties or their counsel.  Such extraordinary fees and expenses shall be limited to those found to be reasonable and necessary in the sound discretion of the trial judge.

**{¶13}** Under the formula in Loc.R. 17.01(A), because the farm was valued at $810,000, the amount of attorney fees the court could tax was "fixed" at $33,900 unless it awarded extraordinary compensation pursuant to Loc.R. 17.01(B), which it did not. Loc.R. 17.01(A) is "subject to R.C. 5307.25," which states:

Having regard to the interest of the parties, the benefit each may derive from a partition, and according to equity, the court of common pleas shall tax the costs and expenses which accrue in the action, including reasonable counsel fees, which must be paid to plaintiff's counsel unless the court awards some part thereof to other counsel for services in the case for the common benefit of all the parties * * *.

**{¶14}** Initially, the Woolevers suggest that the court applied the wrong legal standard, which is an issue we review de novo. *In re Name Change of Rowe*, 4th Dist. Scioto No. 18CA3837, 2019-Ohio-4666, ¶ 16. Although the Woolevers state the "sole issue is the allocation of the $33,900.00 in attorneys' fees," i.e., the amount "fixed" by Loc.R. 17.01(A), they also appear to argue that the court erred by applying the local rule. They observe R.C. 5307.25 does not reference "a sliding scale based upon the value of the property," assert the local rule "is invalid if it does not take into consideration any equities required by the statute," and claim the rule "does not apply in contested attorney fee disputes." The Woolevers also suggest that because the court did not issue findings of fact and conclusions of law, it ignored R.C. 5307.25 and improperly used a "predetermined formula" to apportion attorney fees, i.e., the local rule formula and percentage of ownership apportionment.

**{¶15}** These arguments are not well-taken. Loc.R. 17.01(A) specifically states it is "subject to R.C. 5307.25," and the Woolevers invited any error in the use of the local rule formula to cap the attorney fees taxed as costs by stipulating: "Based on the appraised value of the Property by the Commissioners, [t]he total amount of attorney's fees to be paid in this partition action pursuant to Local Rule 17.01, RC §5307.25 and the case law pertaining thereto * * * are capped at the amount of $33,900." *See State v. Ford*, ___ Ohio St.3d ___, 2019-Ohio-4539, ___ N.E.3d ___, ¶ 279, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20, 502

N.E.2d 590 (1986), paragraph one of the syllabus ("The doctrine of invited error specifies that a litigant may not 'take advantage of an error which [the litigant] invited or induced' "). Moreover, we will not presume the court ignored R.C. 5307.25 and made a "predetermined" decision to apportion fees based on percentage of ownership because it did not issue findings of fact and conclusions of law, which the Woolevers did not request. The court stated that it made its decision "[a]fter considering all of the applicable law as outlined in the post-hearing Briefs of the parties and all of the evidence submitted at the oral hearing * * *." And "[i]n the absence of findings of fact and conclusions of law, we presume that the trial court applied the law correctly and will affirm its judgment if evidence in the record supports it." *Harper v. Neal*, 4th Dist. Hocking No. 15CA25, 2016-Ohio-7179, ¶ 19.

{¶16} The Woolevers also contend that the trial court abused its discretion when it apportioned attorney fees. *See generally Dolan v. Glouster*, 4th Dist. Athens Nos. 11CA18, 12CA1, 11CA19, 12CA6, 11CA33, 2014-Ohio-2017, ¶ 115 ("Generally, the amount of an attorney fee award lies in a trial court's sound discretion and its determination will not be reversed absent an abuse of that discretion"); *Sweet v. Caudill*, 11th Dist. Portage No. 2004-P-0095, 2006-Ohio-1009, ¶ 12 ("While the right to partition is controlled by statute, it arises on the chancery side of the court, and remains equitable in nature. * * * The standard of review in equitable proceedings is abuse of discretion"). "An abuse of discretion exists when a decision is unreasonable, arbitrary, or unconscionable." *State ex rel. Seabolt v. State Hwy. Patrol Retirement Sys.*, 156 Ohio St.3d 444, 2019-Ohio-1594, 129 N.E.3d 379, ¶ 15.

**{¶17}** The Woolevers maintain that it was inequitable for the court to only order the Noeckers to pay $3,390 in attorney fees, i.e., 10% of $33,900, when the Woolevers have to pay $61,228.50 in attorney fees—$30,510 for the Noeckers' attorney fees (90% of $33,900) and $30,718.50 to defense counsel. They assert that the fee determination did not "accurately reflect the common benefit bestowed upon all parties." They claim the court should have ordered the Noeckers to pay 90% of $33,900 to defense counsel because his performance mostly benefited them.

**{¶18}** The Woolevers assert that litigation by defense counsel of title issues was "essential to the partition" because title "had to be cleared *before* sale and if the trust was engrafted upon the title no one would purchase it-or-[the Woolevers] would be the only one to bid." They claim the parties benefitted from procedural suggestions of defense counsel, i.e., the use of three commissioners and pre-filing review of their report by counsel. The Woolevers maintain that because of defense counsel's services, the parties avoided the risks involved in a sale. They claim defense counsel offered acreage from "the south end of the property to avoid total partition" which the Noeckers "accepted * * * after arguing over exact dimensions" and "dealt with the surveyor time and again to sketch off the proposal acreage each time, including the final [metes] and bounds description to set off to [the Noeckers]." Defense counsel met with the Ohio Department of Transportation ("ODOT") to "determine that a road cut could be accomplished at the property," and "settled" the Hovises' "trespass and encroachment of their waterline and their horse pasture which is on [the Noeckers'] 16.2 acres." Defense counsel "disentailed the acreage to [the Noeckers] from the restrictive trust provisions" and "got his clients to forgo fraud which entitled them to damages for intentional interference with

expectation of inheritance." The Woolevers claim Karen Hovis defrauded her father and siblings and the Noeckers were not bona fide purchasers for value because they knew about the trust provisions, so their deed was void or the trust provisions encumbered title to the farm, and the Noeckers were subject to a claim for money damages.

{¶19} The Woolevers have not demonstrated that the court's decision to not tax as costs fees of defense counsel was unreasonable, arbitrary, or unconscionable. The court could reasonably conclude title litigation was not for the common benefit of all the parties. Although the Woolevers assert that it was necessary to clear title before a sale, no sale occurred. Instead, the parties agreed to a partition in kind with a straightforward resolution of title issues—the Noeckers would receive 16.2 acres free of any interest of the Woolevers, the Woolever Entities would get the remainder free of any interest of the Noeckers, and the Hovises had no interest in the farm.

{¶20} Even if defense counsel made procedural suggestions that were for the common benefit of all the parties, it is not apparent from his itemized billing statement what time counsel expended to come up with the idea to use three commissioners (which is specifically allowed by R.C. 5307.04) or to conduct a pre-filing review of their report. Although the Woolevers assert it was defense counsel's idea for the Noeckers to receive property from the south end of the farm and that counsel spent time with the surveyor to create proposals, the parties ultimately agreed to dimensions that the Noeckers proposed and the commissioners recommended. Moreover, at the time of the hearing on attorney fees, the final metes and bounds description had not been prepared, so time counsel spent on it is not reflected in the itemized billing statement submitted at the hearing.

{¶21} The trial court could reasonably decline to award compensation for defense counsel meeting with ODOT. Even if this was for the common benefit of all the parties, the only itemized billing entry related to ODOT states: "Got another survey. To Engineer's Office. [R]eferred to ODOT. To ODOT. (Crop Prod. Serv/FSA) Consent." Defense counsel billed $312.50 for 1.25 hours, and it is unclear how much of that time was spent at ODOT discussing the road cut.

{¶22} The trial court could also reasonably reject a request for fees for services to "settle" the issue of the "Hovises' trespass and encroachment of their waterline and their horse pasture." Karen Hovis averred that the waterline had been disconnected, that her father had given the Hovises permission to build a horse stable, that the Woolevers had not requested removal of the stable, and that the Hovises did not own the pony the Woolevers alleged was being maintained on the property. Even if there was some ongoing trespass or encroachment, it is not clear how defense counsel resolved these issues for the benefit of the Noeckers. The Woolevers dismissed their cross-claim on these issues, and although the agreed entry states the Hovises stipulated they had no interest in the property, it does not indicate they ceased any ongoing trespass or removed any encroachment.

{¶23} The trial court also did not have to tax as costs fees for time defense counsel spent to "disentail" the 16.2 acres "from the restrictive trust provisions" and convince the Woolevers to dismiss their intentional interference with expectancy of inheritance claim. The court never ruled on whether Karen Hovis agreed to convey her interest to Woolever Family, LLC or what impact the trust provisions had on partition. Although the Woolevers claim the case resolved because the judge "commented

favorably" on their position "to avoid ruling on summary judgment," they do not cite any part of the record to support this assertion.[2]  *See* App.R. 16(A)(7) (appellate brief shall include an argument with citations to "parts of the record on which appellant relies"). Even if time defense counsel spent to persuade his clients to convey their interest in the 16.2 acres free of the trust terms and dismiss the intentional interference claim was for the common benefit of the parties, it is unclear from the general descriptions in the itemized billing statement how much time counsel spent on these issues.

**{¶24}** The Woolevers also have not shown the decision to apportion the Noeckers' attorney fees based on percentage of ownership was unreasonable, arbitrary, or unconscionable.  R.C. 5307.25 requires that the court have "regard to the interest of the parties" when it taxes attorney fees, and apportionment based on percentage of ownership is not inequitable simply because the Woolevers must pay more than the Noeckers.  The court did not have to conclude equity favored the Woolevers because the Noeckers knew of the trust provisions when they bought the interest of Karen Hovis, which was not trust property.  Moreover, the court did not have to conclude that the mutually agreed upon partition terms benefitted the Noeckers more than the Woolevers.

**{¶25}**  Finally, we note that in their appellate brief, the Woolevers quoted *Fibbe v. Poland*, 24 Ohio App. 532, 535, 157 N.E. 808 (1st Dist.1927), which states that because services in that partition case were "rendered for the benefit of all, the counsel fees should not be a charge only on the defendants, but should be divided equally among the parties."  Although the Noeckers interpret the use of this quotation as an argument for 50/50 apportionment, the Woolevers did not request that in their brief, and any

---

[2] In their appellate brief, the Woolevers actually state that the judge commented favorably on "Plaintiff's" position, but this appears to be a typo because elsewhere in their brief, they claim the judge commented on "unchallenged favorable law" set forth in their own trial brief.

contention that *Fibbe* mandates 50/50 apportionment in this case is contrary to their position that a court may not use a predetermined formula to apportion attorney fees under R.C. 5307.25.

**{¶26}** For the foregoing reasons, we overrule the assignment of error to the extent it challenges the attorney fee determination.

## IV.  SURVEY FEE

**{¶27}** Next, the Woolevers contend the trial court erred when it ordered them to pay a portion of the $1,800 fee for the survey of the entire farm, which occurred prior to the filing of the partition action.  They assert the Noeckers needed the survey "to acquire the acreage to file the preplanned partition."  The Woolevers claim "prefiling costs are not relevant to, nor do they benefit [them]."

**{¶28}** Again, R.C. 5307.25 states:  "Having regard to the interest of the parties, the benefit each may derive from a partition, and according to equity, the court of common pleas shall tax the costs and expenses which accrue in the action * * *."  We review the apportionment of expenses in a partition action for an abuse of discretion. *See generally Sweet*, 11th Dist. Portage No. 2004-P-0095, 2006-Ohio-1009, at ¶ 12 ("The standard of review in equitable proceedings is abuse of discretion").  "An abuse of discretion exists when a decision is unreasonable, arbitrary, or unconscionable."  *State ex rel. Seabolt*, 156 Ohio St.3d 444, 2019-Ohio-1594, 129 N.E.3d 379, at ¶ 15.

**{¶29}** The Woolevers have not demonstrated that the decision regarding the survey of the entire farm meets this standard.  Although the survey happened about seven weeks before the Noeckers filed suit, the commissioners stated that they used "survey maps and other measurements provided to" them in performing their duties, and

the Woolevers fail to articulate how the parties could have negotiated or effected a partition in kind without a recent survey of the entire farm.  Instead, they make a conclusory statement that the survey was "unnecessary to describe the acreage to be conveyed."  We overrule the assignment of error to the extent it challenges the survey fee decision.

## V.  CONCLUSION

{¶30}  We overrule the assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
       Michael D. Hess, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**